Felipe COLON, Carmen Quiñones De Colon and Wilfredo Colon, Plaintiffs,

v.

GULF TRADING CO., Defendant and Third-Party Plaintiff,

v.

FARRELL LINES, INC. and Prudential Lines, Inc., Third-Party Defendants.

No. Civ. 79–2348CC.

United States District Court, D. Puerto Rico.

May 30, 1985.

Harry A. Ezratty, San Juan, Puerto Rico, for plaintiffs.

Antonio M. Bird, Jr., San Juan, Puerto Rico, for defendant and third-party plaintiff.

J. Ramón Rivera-Morales, Jimenez & Fuste, San Juan, Puerto Rico, for third-party defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action in admiralty and under the Jones Act, 46 U.S.C. Section 688, by a former seaman who seeks redress for an asbestosis condition he allegedly contracted while working aboard the SS GULF DEER, a Gulf Trading Co. (Gulf) vessel. A prior ruling allowed plaintiff to amend his complaint to include as damages the loss of society of his spouse and son and to allege that the action against Gulf was not barred by laches. 576 F.Supp. 1379 (1983). Presently before us is third-party defendant Prudential Lines, Inc.'s (Prudential) Motion to Dismiss for Lack of In Personam Juris-

diction and the opposition and replies filed on January 21, 1983 and thereafter. The third-party defendant's basic contention is that it does not have any contacts with this forum and that whatever contacts may be claimed are not related to the cause of action. As its grounds for exerting jurisdiction over Prudential, Gulf advances the novel theory that Prudential committed a tort within Puerto Rico because plaintiff's symptoms of asbestosis became manifest in Puerto Rico. For the reasons that shall be stated, we reject the symptom-manifestation theory in asbestos cases as determinative of situs of a tort for purposes of attaching personal jurisdiction over a tortfeasor.

This action commenced on October 10, 1979 when Felipe Colón sued Gulf for damages resulting from exposure to asbestos while working aboard the SS GULF DEER from 1971 to 1978. Defendant answered on February 26, 1980 and raised the defenses of laches, time limitations and contributory negligence. On June 29, 1981 defendant filed a third-party complaint against Farrell and Prudential which alleged that from 1964 to 1965 while on board the SS EXIRA, a vessel owned by a predecessor corporation of Farrell, and during 1953 while working aboard the SS MOLINE, a vessel owned by Prudential, Colón was exposed to asbestos. It contended that since plaintiff had been exposed to asbestos while working on these ships, Farrell and Prudential should be held liable to him or be ordered to respond in proportion to their contribution to his condition.[1] Prudential replied on August 11, 1982 raising a number of defenses, among them, lack of personal jurisdiction. It did not object to the choice of forum nor is there any indication that inconvenience of the forum was raised as an issue. Prudential's motion to dismiss is limited to lack of in personam jurisdiction. It contains several exhibits which reveal that Prudential has never conducted any activities whatsoever in Puerto Rico. It contends that none of the situations contemplated in Rule 4.7, Rules of Civil Procedure of Puerto Rico, *P.R. Laws Ann.*, Title 32, App. III, are present for it did not commit a tortious act in Puerto Rico, the ship with the alleged unseaworthy condition of exposed asbestos dust never docked or departed from Puerto Rico while plaintiff served as a seaman, it is not alleged that Prudential was engaged in the transportation of passengers or freight from Puerto Rico and none of the other circumstances contained in this subdivision of the Rule are raised in the third-party complaint. Gulf invokes personal jurisdiction on various alternative grounds provided by the Rule. As to Prudential, it argues that the First Circuit has suggested reading the provision in Rule 4.7 which allows jurisdiction to be exercised over nonresidents who have executed "tortious acts within Puerto Rico," as including also those wrongful acts which were committed outside of Puerto Rico but which had their damaging effects in Puerto Rico. *See: Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983). It attempts to bring into the in personam jurisdiction area the theory adopted for asbestos-type injuries that focuses on the period when the symptoms are manifested rather than on the period of exposure to asbestos to fix the point of departure for purposes of insurance coverage and time limitations. Since Colón's symptoms allegedly surfaced while residing in Puerto Rico, Gulf concludes that Prudential committed a tort within Puerto Rico and is amenable to suit.

In arguing their respective jurisdictional positions the parties have overlooked that the due-process-in-personam problem is analyzed in terms of a state's power to summon out of state defendants vis à vis these defendants' Fourteenth Amendment due

---

1. Underlying this postulate is the until-now-unchallenged assumption that asbestosis does not manifest its symptoms until after a considerable time after initial exposure and that the present disease was the result of the brief exposure claimed. *See: Ins. Co. North America v. Forty-Eight Insulations*, 633 F.2d 1212 (6th Cir.1980), *reh. granted in part, clarified* 657 F.2d 814 (6th Cir.1981) *cert. denied* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650. At this moment it is not necessary to rule on the correctness of these assumptions.

process rights not to be unjustifiedly subjected to litigate in a certain geographical area. However, this analysis is said to be inapplicable to cases where the subject matter jurisdiction of the federal court is federal law. *Terry v. Raymond Intern., Inc.,* 658 F.2d 398, 401–403 (5th Cir.1981); *Manitowoc Engineering Company v. Terry, cert. den.* 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443; *F.T.C. v. Jim Walter Corp.,* 651 F.2d 251, 255–57 (5th Cir.1981); *Fosen v. United Technologies Corp.,* 484 F.Supp. 490, 498 (S.D.N.Y.1980) *aff'd. without op.,* 633 F.2d 203 (2d Cir.1980); *see gen:* 4 Wright & Miller, *Federal Practice and Procedure,* Sec. 1075, N. 26; 2 *Moore's Federal Practice,* Para. 4.25(7), p. 4–291 N. 30 (2d Ed.) *and:* Foster, Long-Arm Jurisdiction, 47 F.R.D. 73 (1968). In these situations the consideration is whether the defendant has sufficient contacts with the United States as a nation and not with any particular state or territory within the union. *Id.* These cases point to the Fifth Amendment rather than to the Fourteenth as the source of any possible Due Process litigation over this country's power to summon beyond its territory, *id.*[2] and *Volkswagen Interamericana, S.A. v. Rohlsen,* 360 F.2d 437, 440 N. 3 (1st Cir.1966) *cert. denied* 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143. Recently, our Circuit addressed the issue. In discussing the difference between the concepts of personal jurisdiction and venue, it said:

> At the outset it must be understood that 'minimum contacts' with a particular district or state for purposes of personal jurisdiction is not a limitation imposed on the federal courts in a federal question case by due process concerns. The Constitution does not require the federal districts to follow state boundaries. *Driver v. Helms,* 577 F 2d 147, 156 (1st Cir. 1978); *rev'd on other grounds, Stafford v. Briggs,* 444 US 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (reversed on statutory construction, constitutional issue not

reached). The limitation is imposed by the Federal Rules of Civil Procedure. It is clear that Congress can provide for nationwide service of process in federal court for federal question cases without falling short of the requirements of due process.

*Johnson Creative Arts v. Wool Masters,* 743 F.2d 947, 950 (1st Cir.1984) (footnotes and citations omitted). In discussing the meaning of this distinction the court commented on the purposes behind the minimum contacts requirement:

> The minimum contacts concept is grounded upon notions of territorial limitations on the power of the courts of a particular state to subject a nonresident to its jurisdiction and thereby infringe upon that person's individual liberty interest. See *Insurance Corp. v. Compagnie des Bauxites,* 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982). The traditional, historical basis of personal jurisdiction was the court's de facto power over the defendant's person. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). If a defendant was present within the territory of the sovereign represented by the court, the court could issue a writ to the sheriff, directing him to take the body of the defendant and keep him in custody to answer the plaintiff's charges. *See id.*
>
> In *International Shoe,* the Court determined that since the capias ad respondendum has given way to personal service of summons or other form of notice, even a person not present within the territory of the forum may be subjected to a judgment in personam if he has such contacts with the forum that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Id.* This allows a court validly to effect extraterritorial service. If a person is served within the territory of

---

**2.** Any summoning procedure is, of course, subject to other Due Process Clause restrictions related to adequate notice. See: *Leansco Data Processing Equipment Corp. v. Maxwell,* 468

F.2d 1326, 1340 (2d Cir.1972). Such challenges, however, have not been raised in the case before us.

the sovereign represented by the issuing court, there is no question that maintenance of the suit against him will not offend traditional notions of fairness.

*Id.* at n. 3. In *Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co.,* 743 F.2d 956 (1st Cir.1984) the court permitted the exercise of in personam jurisdiction over a defendant based on the garnishment of a debt in Puerto Rico[3], regardless of whether defendant had any minimum contacts with that forum. It held that the minimum contacts analysis was inapplicable to federal courts sitting in admiralty for "federal jurisdiction being national in scope, due process only requires sufficient contacts within the United States as a whole ... the limits on a state's power over nonresident defendants do not apply to a federal court sitting in admiralty in that state...." *Trans-Asiatic* at 959. The court considered that Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims provided the necessary mechanism to serve process and attach personal jurisdiction regardless of the presence of contacts with the forum if the defendant had sufficient contacts with any part of the United States. *Id. See also: Grand Bahama Pet. Co., Ltd. v. Canadian Transp.,* 450 F.Supp. 447, 451–53 (W.D.Wash.1978) and *Filia Comp. Nav. v. Petroship,* 1982 AMC 1217, 1223–25 (S.D.N.Y.1982) *but see: Haag v. Kitson & Co.,* 1982 AMC 188 (D.Mass.) *aff'd.,* 647 F.2d 160 (1st Cir.1981) (quasi in rem attachment in trustee process procedure could not impart jurisdiction over Bermuda company for maritime injury near that forum where company did not have any significant contacts with Mass.) Both *Trans-Asiatic* and *Johnson Creative* point to considerations of proper venue as the true focal point in this type of situation rather than to an inquiry on whether personal jurisdiction lies.[4] *Trans-Asiatic* at 959 and *Johnson Creative* at 951. In *Johnson Creative* it was suggested that the propriety of venue according to the doing-business criteria of the general venue statute, 28 U.S.C. Section 1391, be measured by the Commerce Clause's constitutional limitation on the states' power to require business licenses rather than by the Due Process Clause minimum contacts in personam jurisdiction analysis. *Id.* at 954–955.

In the present case the issue of improper venue has not been raised. Given the waivable characteristics of this defense, *see: Leroy v. Great Western United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979); *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 154, 84 L.Ed. 167 (1939), and the lack of any minimum contact requirement for personal jurisdiction in cases brought under federal question subject matter jurisdiction, one would have to con-

---

**3.** An amount of money owed to defendant by a Puerto Rican public corporation was attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

**4.** The potentially inequitable situation confronted by third-party defendants in federal question cases who may be precluded from challenging the venue of the main action or of the one against them and who can only question the convenience of the forum as part of the considerations to be taken in order to determine if the third-party action is permitted, *see gen.:* 6 Wright and Miller, *Federal Practice and Procedure,* Section 1445, pp. 240–245, was not considered by the recent First Circuit cases discussed above. Given the liberality in permitting third-party actions, when the potential third-party defendant is finally notified and can voice its objections to the previous ruling because the forum is inconvenient, the objections may be merely perfunctory. In addition, the determination of which standard to be applied when the action is based on federal question jurisdiction against some defendants and on diversity against others was not considered either. It is interesting to note, however, the approach taken to determine whether there was personal jurisdiction over an insurer third-party defendant brought pursuant to Puerto Rico's direct action statute against insurers (*P.R.Laws Ann.,* Title 26 Section 2003) when the main action was based on federal question jurisdiction. *See: Comm. of Puerto Rico v. SS Zoe Colocotroni,* 628 F.2d 652, 667, (1st Cir.1980), *cert. denied* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981); *Morales v. Puerto Rico Marine Management, Inc.,* 474 F.Supp. 1172 (D.P.R.1979). Our conclusion today does not require that we direct our attention to these inquiries. They are pointed out as food for thought.

clude, as suggested by Gulf,[5] that personal jurisdiction exists over third-party defendants and that venue is proper in this district or, if it is not, that the parties have waived objecting to it. *See: Concession Consultants, Inc. v. Mirsch,* 355 F.2d 369, 371 (2d Cir.1966). However, a closer reading of the *Trans-Asiatic* and *Johnson Creative* cases reveals an important caveat which does not make the in personam analysis irrelevant.

▮▮▮ These cases, as well as those from other circuits which have singled out this interesting distinction in the minimum contacts analysis,[6] have circumscribed the power of nationwide personal jurisdiction to a specific congressional mandate or rule to exercise such power through a mechanism to serve process and attach personal jurisdiction over a defendant. *See* instances cited in *DeJames v. Magnificence Carriers, Inc.,* 491 F.Supp. 1276, 1282–83 (D.N.J. 1980) aff'd. 654 F.2d 280 (3rd Cir.1981) and in *Terry v. Raymond Intern., Inc.,* 658 F.2d 398, 402 (5th Cir. Unit A 1982). In *F.T.C. v. Jim Walter Corp.,* 651 F.2d 251 (5th Cir. Unit A 1981) it was held that Section 9 of the Federal Trade Comm. Act provided the grounds for the exercise of such power through an implicit authorization for nationwide service of process. Likewise, in *Fitzsimmons v. Barton,* 589 F.2d 330 (7th Cir.1979) Section 78aa of the Securities and Exchange Act was used as the source to effectuate in personam juris-

diction through nationwide service whereas in *Trans-Asiatic v. Apex Oil,* this power was exercised through the quasi in rem attachment provided by Rule B1 of the Supplemental Admiralty Rules. On the other hand, it was held in *Central Operating Co. v. Utility Workers of America,* 491 F.2d 245, 249–50 (4th Cir.1974) that the Labor Management Relations Act did not provide for nationwide service of process and in *Bernard v. Richter's Jewelry Co.,* 53 F.R.D. 606, 607–8 (S.D.N.Y.1971) the Truth in Lending Act was interpreted as not providing for nationwide service. *See also: Marsh v. Kitchen,* 480 F.2d 1270, 1273 n. 8 (no nationwide service provided for *Bivens* type action) *Safeguard Mutual Insurance Company v. Maxwell,* 53 F.R.D. 116, 118 (E.D.Penn.1971) (Civil Rights Act's silence on this matter interpreted as supporting conclusion that no nationwide process was provided by that law). The fact that federal courts may have the jurisdiction to summon any nonresident with sufficient contacts with the United States to a particular district does not mean that federal courts have unfettered discretion to dispatch their marshals to all corners of the nation to serve process on any defendant they see fit. The instances in several federal laws where Congress has specifically indicated that process could be had nationwide as well as the geographical restrictions the Supreme Court has deemed proper for lower federal courts to

---

**5.** Gulf indicated offhandedly in its memorandum in opposition to the motion to dismiss that venue was proper in Puerto Rico given the Jones Act venue statute, 46 U.S.C. Section 688. In view of our analysis, we need not determine whether venue is proper in this district court under that statute or under any other statute or standard, i.e., 28 U.S.C. Section 1391 (general venue statute) *Tramp Oil and Marine, Ltd. v. M/V Mermaid I,* 743 F.2d 48 (1st Cir.1984) (forum nonconveniens) and *see: Pure Oil Company v. Suárez,* 384 U.S. 202, 203–207, 86 S.Ct. 1394, 1395–1397, 16 L.Ed.2d 474 (1966) (applicability of venue statutes to admiralty).

**6.** The theory adopted by our Circuit and other circuits has met some detractors *see: DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 293 (3rd Cir.1981) *cert. denied* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (Gibbons, dissenting);

*Ingersoll Milling Machine Co. v. J.E. Bernard & Co.,* 508 F.Supp. 907, 910 n. 4 (N.D.Ill.,1981) and the discussion in *Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265, 1268–70 (6th Cir.1984). Other courts have merely noticed the distinct approach but have proceeded with the traditional minimum contact analysis. See: *Dunn v. Southern Charters, Inc.,* 506 F.Supp. 564, 566 (E.D.N.Y.1981). Although it is tempting to adopt this approach, we believe it best to first pinpoint the subject matter jurisdiction to see which personal jurisdiction analysis is used in order to prevent the possibility of confusion with other forms of service provided by federal law which mention similar doing business concepts, i.e., Admiralty Rule B, but which may require a different analysis. *See: Cobelfret-Cie Belge v. Samick Lines Co., Ltd.* 542 F.Supp. 29, 31 (W.D.Wash.1982).

follow, through the requirements of the Federal Rules of Civil Procedure it has promulgated,[7] are adequate grounds to support the conclusion that we cannot exercise nationwide personal jurisdiction unless Congress, or the Supreme Court, grants the authority to implement this jurisdictional power. *See: Burstein v. State Bar of California,* 693 F.2d 511, 514–517 (5th Cir. 1982); *Banks v. Sheppard,* 435 F.2d 1218, 1219 (9th Cir.1971); *Norris v. State of Georgia,* 522 F.2d 1006, 1010 (4th Cir. 1975).[8]

In the admiralty case before us, we have found no federal statutory authority for nationwide service of process. *See: De-James,* 491 F.Supp. at 1284; *Gutiérrez v. Raymond Intern., Inc.,* 484 F.Supp. 241, 244 (S.D.Tex.1979). Aside from the quasi-in-rem attachment provision of Rule B and the special service provided in section (2) of that Rule, the only other alternative authority to serve process would be Rule 4 Fed.R.Civ.P.[9]

> Section (e) of this Rule provides that: Whenever a statute of the United States or an order of the court thereunder provides for service of summons ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons ... upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule,

▪ Gulf relies upon this rule to bring Prudential to the action. It is in this context, when Rule 4(e)'s borrowed state service is used to hale a litigant into federal court, that the minimum contacts analysis is pertinent to determine whether the extraterritorial service was performed correctly and within the due process restrictions on the states' summoning power. The general criteria developed in the nonfederal question context is useful and applicable to this particular situation.[10] See: *Johnson Creative,* 743 F.2d at 950; *Burstein,* 693 F.2d at 517; *DeJames,* 654 F.2d at 283; *Black v. Acme Markets, Inc.,* 564 F.2d 681 at 685 (5th Cir.1977); *Hartley v.*

**7.** For example, the 100 mile territorial limit of Rule 4(f) which, as a tribute to the argument that federal district courts are not bound by state boundaries, may in some districts provide for service outside of the state lines.

**8.** It should be noted that some authorities have indicated that the inclusion of the word "thereunder" in Rule 4(e)'s amendment of 1963 was to make certain that the language in that section would not be interpreted to sustain the issuance of summons based merely on an order by the court without reference to any statutory or rule basis. *See:* 4, Wright and Miller, *Federal Practice and Procedure,* Section 1117, p. 482.

**9.** Under this analysis it follows that in federal question cases service could be made upon a non-foreign defendant by using any of the forms of service provided by Rule 4 without regard to the existence of sufficient minimum contacts with the forum. *See: Johnson Creative,* 743 F.2d at 950 n. 3 and *DeJames,* 491 F.Supp. at 1284. Thus a defendant who was merely passing through the territorial jurisdiction might be served. Although this may induce some litigants to participate in the type of "cat and mouse" jurisdiction by attachment activity

that the Due Process Clause contacts analysis indirectly curtailed, it is not within our province to rearrange the rule to accommodate this doctrine.

**10.** We decline to follow the view that since the Fifth Amendment Due Process limitations apply to federal question personal jurisdiction determinations, a different, ill-defined and, apparently venue-like, concept of fairness should be applied. See: *Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265, 1271 (6th Cir.1984) ("whether the ... assertion of jurisdiction unfairly burdened [defendant] with the requirement of litigating in an inconvenient forum." *Id.* at 1271); *see also id.* dissenting opinion by Krupanski, J. at 1272. We see no discrepancies in the Fifth Circuit cases, *see: Bamford v. Hobbs,* 569 F.Supp. 160, 167 (S.D.Tex.1983) if one adheres to the notion that Congress or the Supreme Court have the authority to limit the nationwide personal jurisdiction of federal courts through the manner process may be served and that we are compelled to follow such strictures.

*Sioux City and New Orleans Barge Lines, Inc.*, 379 F.2d 354, 356 (3rd Cir.1967); *Bamford v. Hobbs*, 569 F.Supp. at 167; *DeJames*, 491 F.Supp. at 1283; *Gutiérrez v. Raymond Intern., Inc.*, 484 F.Supp. 241, 244 (S.D.Tex.1979). As indicated in *DeJames v. Magnificence Carriers, Inc.*:

> [T]he United States has by the enactment of the Federal Rules of Civil Procedure imposed restrictions upon the exercise of personal jurisdiction by its courts. One such restriction ... is that imposed by Rule 4(e), which provides that when substituted service is made pursuant to a state's long-arm statute, the service be made 'under the circumstances and in the manner prescribed in the statute.' Fed. R.Civ.P. 4(e)(2). That portion of the Rule has been interpreted to mean that service under a valid state long-arm statute in a federal court is only possible in those situations where the in-state activities of the defendant would be sufficient to invoke the long-arm statute had the defendant been sued in state court.... Thus, where service of process is effected by means of a state statute, a federal court is forced to look to the state in which the district is located to determine whether jurisdiction may be asserted over an out-of-state defendant.

*Id.* at 1283 (footnotes and citations omitted).

 We shall examine whether Prudential could have been summoned in the "manner and circumstances" provided in Rule 4.7 of the Puerto Rico Rules of Civil Procedure. The first tier in the personal jurisdiction analysis is to determine whether the state long-arm statute permits the service in question. *Comm. of P.R. v. Colocotroni*, 628 F.2d at 667; *Caso v. Lafayette Radio Electronics Corporation*, 370 F.2d 707, 709 (1st Cir.1966); *Pulson v. American Rolling Mill Co.*, 170 F.2d 193, 194 (1st Cir.1948). "We need go no further once it is resolved that the Commonwealth courts would not assume jurisdiction." *Torres v. American Service Mutual Insurance Company*, 294 F.Supp. 635, 637 (D.P.R.1969). A reading of Rule 4.7 supports Prudential's position that the long-

arm statute does not contemplate exercising jurisdiction based on activities not related to the cause of action. All the situations enumerated in the Rule are subordinated to the introductory sentence which states in no uncertain terms that the courts of Puerto Rico will have jurisdiction over the non-resident defendant if the cause of action *arose as a result of* any of the enumerated situations. Rule 4.7, P.R. Rules of Civil Procedure. Gulf argues that Puerto Rico's long-arm jurisdiction extends as far as the Federal Constitution permits. It cites a series of federal cases which have repeatedly construed Puerto Rico's long-arm statute as extending to the limits of the Federal Due Process Clause.

The Federal Due Process limitations on the exercise of personal jurisdiction by state courts appear to permit the exercise of such jurisdiction in situations beyond those contemplated by Rule 4.7 and its "arising from" restriction. As indicated by the Supreme Court's recent decision in *Helicópteros Nacionales de Colombia, S.A. v. Hall*, —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404:

> Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation.

*Id.* at 104 S.Ct. at 1872. This type of exercise of personal jurisdiction is referred to as "general" jurisdiction whereas the type of personal jurisdiction exercised over a defendant in an action arising from or related to the defendant's contacts with the forum is called "specific" jurisdiction, *id.* at notes 8 and 9. Thus, if Puerto Rico's long-arm statute was indeed designed to extend extraterritorial reach to the limits of the Federal Due Process Clause, as some federal cases appear to suggest, then it could be argued that general jurisdiction type situations would have to be added to the list provided by Rule 4.7. In most of the First Circuit cases examined, the contacts

themselves gave rise to the cause of action, *see e.g.: Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983) (no personal jurisdiction because defendant's trips to the forum found not causally connected to tort); *Vencedor Mfg. Co., Inc. v. Gougler Industries*, 557 F.2d 886 (1st Cir. 1977) (action for breach of contract, contacts were the execution of the contract and its breach); *W. Clay Jackson Enterprises v. Greyhound Leasing*, 431 F.Supp. 1229 (D.P.R.1977) (suit for wrongful attachment, contacts related to actions of parent corporation which controlled the subsidiary that committed the tortious act); *Commodities World Intern. Corp. v. Royal Milc*, 440 F.Supp. 1373 (D.P.R.1977) (shipping contract damaged shipment, contacts related to shipping contract); *Ramón Vela, Inc. v. Sagner, Inc.*, 382 F.Supp. 478, 481 (D.P.R.1974) (breach of contract to be executed in Puerto Rico, contacts were the establishment of the business relationship by the contract); *Executive Air Services, Inc. v. Beech Aircraft Corporation*, 254 F.Supp. 415 (D.P.R.1966) (breach of Law 75 contract, contacts were the establishment of the contractual relationship with Puerto Rican residents and its breach which, according to the Dealer's Act, is considered to be tantamount to committing a tort within Puerto Rico,) *see: A. H. Thomas Co. v. Superior Court*, 98 PRR 864, 867 at n. 2 (1970). In others, the characterization was made in order to support an interpretation of what was considered an ambiguity in the language of the rule, e.g.: *Mangual v. General Battery Corp.*, 710 F.2d at 19, to construe the " '[e]xecutes by himself or through his agent tortious acts within Puerto Rico' " of Rule 4.7(a)(2). Many of these cases do not mention the concept of general jurisdiction nor discuss in any detail the origin of this type of jurisdiction: *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). It may well be that when they conceptualized Rule 4.7's reach to the limits of due process, they were merely saying that the rule was intended to extend as far as the Due Process Clause would permit the exercise of the *specific* jurisdiction situations there enumerated and not that it meant to include another type of personal jurisdiction not included in its listing. In any event, to interpret the Puerto Rican rule one must look at its language, history and at its construction by the Supreme Court of Puerto Rico.

This inquiry lends little support to the assumption that Rule 4.7 contemplates the doctrine of general jurisdiction. The language itself is the clearest indication of its intended scope and we see no ambiguity in this part of the rule's text or in predecessor rules which also required that the action arise from contacts with the forum. *See: P.R. Laws Ann.*, Title 32 Section 463(5). Despite various amendments to the rule since its enactment in 1958, the specific requirement that the cause of action arise out of one of the situations enumerated in it has not changed. Although its legislative history reveals that it intended to expand the reach of Puerto Rico courts in light of modern tendencies to expand extraterritorial jurisdiction, Journal of Proceeding 1784 (1965), this is a far cry from saying that Rule 4.7's reach was extended to the limits of the Federal Due Process Clause. Yet, the strongest indication that the rule ought to be interpreted according to its express language comes from the Supreme Court itself.

None of the Puerto Rico Supreme Court cases which have dealt with Rule 4.7 have adopted the notion that the long-arm statute includes general jurisdiction type situations. The case most often cited, *A.H. Thomas Co. v. Superior Court*, 98 PRR 864 (1970), merely discusses, in the alternative, the more expansive jurisdictional approach. It does contain a passing remark that recognizes the existence of federal cases which had characterized the rule as extending jurisdiction to the constitutional limits—all of which deal with specific rather than general type jurisdiction—without approving or disapproving of them. An integral reading of this 1970 opinion, however, appears to suggest that the Court recognized the limitations of Rule 4.7 and the fact that it did not include all possible

jurisdictional situations permitted under the Federal Constitution for it suggests adopting a more ample standard which would have included the concept of "general jurisdiction" *id.* at 867 n. 2. In *Medina v. Superior Court,* Vol. 4 Official Translations of the Supreme Court, p. 485 (1975) the court interpreted the *A.H. Thomas* decision as

adopting the doctrinal tendency created by *International Shoe Co.* but reducing a little its ample perspective upon requiring—following *Hanson v. Deckla, supra*— that the contact with our jurisdiction result from a purposeful act through which defendant purposefully avails himself of the privileges offered by our forum invoking the benefits and protection of the laws of Puerto Rico. We do not define the concept of 'minimum contacts' but we follow the general guidelines arising from *International Shoe Co.; Travelers Health Ass'n. v. Virginia,* 339 US 643 [70 S.Ct. 927, 94 L.Ed. 1154] (1950); *Perkins v. Benguet Consol Min Co.,* 342 US 437 [72 S.Ct. 413, 96 L.Ed. 485] (1952); *McGee v. International Life Ins. Co.,* 355 US 220 [78 S.Ct. 199, 2 L.Ed.2d 223] (1957) and *Hanson v. Deckla, supra.* (sic)

*Medina,* Off. translations at 493. Neither subsequent amendments nor the 1979 revision of the Puerto Rico Rules of Civil Procedure added the general jurisdiction type of situation suggested in *A.H. Thomas.* In fact, the Supreme Court's most recent pronouncement on Rule 4.7 seems to disapprove the federal courts expansive interpretation and suggests that it be followed literally, unless amended. In *Industrial Siderúrgica, Inc. v. Thyssen Steel Caribbean, Inc.,* opinion number 82–795 of June 30, 1983, 83 JTS 78, the court made the following observations:

When interpreting our long-arm statute the United States Court of Appeals for

the First Circuit has expressed that Civil Procedure Rule 4.7 intends to extend the exercise of the Commonwealth of Puerto Rico's in personam jurisdiction to the constitutionally permissible maximum. *Comm. of Puerto Rico v. SS Zoe Colocotroni,* 628 F 2d 652, 668 ( [1st Cir.] 1980) *cert. den.* 450 US 912 [101 S.Ct. 1350, 67 L.Ed.2d 336] (1981).

We must clarify, however, that an affirmative act which from a constitutional point of view may constitute a minimum contact between an absentee and our forum, is not sufficient, by itself, to authorize our courts to exercise their jurisdiction if said act cannot be framed in any of the circumstances described by Civil Procedure Rule 4.7. If it were to be otherwise, it would be necessary to adopt a statute like the one in California which states: 'A court of this state may exercise its jurisdiction on any basis not incompatible with this state or the United States' Constitution.' West's Ann.Cal. Code Civ.Proc., Section 410.10, *see:* Green, Jurisdictional Reform in California, 21 Hast.L.J. 1219 (1970).

This norm, would, of course, be much more difficult to administer, and until Rule 4.7 is not amended in this sense, the initial survey should always be to determine if the conduct attributed to the absent defendant is comprised in its dispositions. See *World-Wide Volkswagen v Woodson, supra,* [444 U.S. 286], at pages 289–290 [100 S.Ct. 559, at page 563, 62 L.Ed.2d 490]. (sic)

*Industrial Siderúrgica, Inc.,* 83 JTS 78 at n. 5, pp. 3280–81. (Our translation.)

In view of these guidelines by the promulgators of the Rules of Civil Procedure of Puerto Rico, *see:* Puerto Rico Constitution Art. V Section 6,[11] we conclude that Puerto Rico's long-arm statute, although intended perhaps to extend specific type personal jurisdiction to the limits of the

---

11. Said section states:

The Supreme Court shall adopt for the courts rules of evidence and of civil and criminal procedure which shall not abridge, enlarge or modify the substantive rights of the parties. The rules thus adopted shall be submitted to the Legislative Assembly at the beginning of its next regular session and shall not go into effect until sixty days after the close of said session, unless disapproved by the Legislative Assembly. . . .

Federal Due Process Clause, does not contemplate the extraterritorial summoning of defendants based on the exercise of general-type personal jurisdiction. Although the attempt to construe state extraterritorial summoning powers as equivalent to federal standards in order to impart uniformity to the federal system of courts is proposed by some as the proper approach in cases where a federal court is acting pursuant to federal question subject matter jurisdiction, *see Handley,* 732 F.2d at 1270 and *Foster, supra,* at 95–97, we understand that, given the reference to the "manner and circumstances" found in Rule 4(e) Federal Rules of Civil Procedure and the specific language and construction by local authorities of Rule 4.7, we must abandon any attempt at judicial legislation in order to advance a particular notion of federalism. See: *Caso v. Lafayette Radio Electronics Corporation,* 370 F.2d 707, 710 (1st Cir.1966). Faced with a similar choice in a different factual situation, this Court has refrained in the past from redrafting the law to suit its particular philosophical inclinations. In *Torres v. American Service Mutual Insurance Company,* 294 F.Supp. 635, 638 (D.P.R.1969), it was said:

> The Court is faced with a hard choice to make for the state hasn't provided the litigant with the machinery to assert his substantive rights under the direct action statute, if any. The harsh results reached in the case at bar could only be erased by legislative, not judicial action. Sympathetic as this Court feels towards plaintiffs' cause of action and conscious of Puerto Rico's interest in providing remedies and protection to those injured here, nevertheless, it is unwilling to extend its judicial power so as to give a statutory interpretation which is so broad that the function reserved to the legislative branch is thereby usurped.

Even if it were assumed that Rule 4.7 encompasses "general" jurisdiction following the principle that in admiralty cases state long-arm statutes should be liberally construed to attach jurisdiction for "a state legislature is unlikely to draft its long-arm statute with the typical admiralty case in mind ..." *Gipromer v. SS TEMPO,* 487 F.Supp. 631, 634 (S.D.N.Y.1980), the contacts here would not meet the due process standard, as applied to the exercise of general type personal jurisdiction. Any notion that the proposition announced in *Perkins v. Benguet*—that due process is not offended if there are sufficient "continuous and systematic" contacts to support the exercise of general jurisdiction—should be applied liberally has been dispelled by subsequent caselaw. In *Helicópteros Nacionales* the Court, after listing the activities which supported the *Perkins* finding of jurisdiction, concluded that the out of state defendant's continuous and systematic activities consisting in the negotiation and discussion of a contract to purchase helicopters in Texas, the purchase of helicopters, spare parts and accessories totalling more than four million dollars from Texas during a seven year period and the sending of prospective helicopter pilots for training and management and maintenance personnel to Texas during that same period were insufficient to allow Texas to exercise its general-type jurisdiction. *Helicópteros,* 104 S.Ct. at 1870. In fact, there are grounds to believe that the exercise of personal jurisdiction in *Perkins* was justified only by the facts surrounding that particular case. *See: Glater v. Eli Lilly & Co.,* 744 F.2d 213, 216–217 (1st Cir.1984) and Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1144 (1961). In *Gutiérrez v. Raymond Intern., Inc.,* 484 F.Supp. 241 (S.D.Tex.1979) the court made a careful analysis of the exercise of jurisdiction based on the general activities of a corporation that had withdrawn from a state and concluded that *Perkins* did not "extend to a corporation which was no longer doing business within the state, continuous, systematic, or otherwise, merely because it once had a license to do business there." *Id.* at 252. It noted that in *Perkins* the defendant was conducting all of the companies' activities at the time the suit was instituted at the forum state where in fact

it was served with process.[12] *Id.* In *Ind S.D. No. 454, Fairmont, Minn. v. Marshall & Stevens Co.*, 337 F.Supp. 1278, 1287 (D.Minn.1971) the court also emphasized the fact that the defendant's activities had ceased in concluding that they were not continuous and systematic within the meaning of *Perkins. See also: White v. Shiller Chemicals, Inc.*, 379 F.Supp. 101, 105 (D.R.I.1974) *aff'd.* 503 F.2d 1396 (1st Cir.1974); *Del Monte Corp. v. Everett Steamship Corp.*, 402 F.Supp. 237, 242 (N.D.Calif.1973). And in *Seymour v. Parke, Davis & Company*, 423 F.2d 584, 587 (1st Cir.1970) importance was given to the fact that in *Perkins* there was no alternate forum to bring the action for at the time defendant's principal place of business, the Philippines, was occupied by an enemy power during the Second World War. The standard applied in evaluating activities said to constitute continuous and systematic contacts of general personal jurisdiction is "considerably more stringent," *Glater*, 744 F.2d at 216, than that used for specific jurisdiction type contacts and the contacts between the defendant and the forum must be "fairly extensive." *Ratliff v. Cooper Laboratories, Inc.* 444 F.2d 745, 748 (4th Cir.1971) *cert. denied* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265.

■ As to the other argument in support of personal jurisdiction that the tort occurred in Puerto Rico because it was here that the asbestosis manifested itself and personal jurisdiction can be exercised pursuant to Rule 4.7(a)(2) [13], none of the Puerto Rico Supreme Court cases that have interpreted the rule support this position. *See: A.H. Thomas*, 98 PRR 864; *Medina*, Vol. 4, Official Translations p. 845 and *Industrial Siderúrgica*, 83 JTS 78. In *Mangual v. General Battery Corp.*, 710 F.2d at 19, the First Circuit used the determination made in *A.H. Thomas* that "business trans-

actions" within the meaning of the rule included sending mail to Puerto Rico from another jurisdiction in order to advance the analogy that the rule may apply to exercise jurisdiction over a tortfeasor who commits a wrongful act outside Puerto Rico's territorial jurisdiction but who had the intention or reasonable knowledge that the damaging effects of that act will be felt in Puerto Rico. This court refers to a defendant who avails himself of the laws and benefits of Puerto Rico and "commits a tortious act within or without the Commonwealth *that he knows or reasonably should know will cause injury in Puerto Rico.*" *Id.* (Our emphasis.) It verges on the absurd to argue that a shipowner should reasonably foresee that an unseaworthy condition, such as exposed asbestos fibers would manifest its harmful effects years later in Puerto Rico merely because a crewmember it hired was born in Puerto Rico or had family ties here, although the crewmember resided elsewhere. It is like saying that Puerto Ricans are possessed with some salmon-like trait which forces them to return to their place of origin to discover an illness they contracted while sailing the seven seas. The fact that in *Eagle-Picher Industries, Inc. v. Liberty Mut. Ins.*, 682 F.2d 12, 19 (1st Cir.1982), *cert. denied* 460 U.S. 1028, 103 S.Ct. 1280, 75 L.Ed.2d 500 (1983) it was found that the insurance policies covered the insurer's liability when asbestosis was manifested, is irrelevant to our jurisdictional issue. In *Eagle-Picher* this conclusion was reached as a result of interpreting the language of an insurance policy. *Id.* at 17. We do not read the *Eagle-Picher* decision as a mandate to apply manifestation of symptoms—point of departure criteria to all types of legal tests in asbestosis or latent injury cases. Although we are aware of the slow development of the asbestos inflicted injury, *see:*

---

**12.** If *Perkins* had been a federal case based on federal question and there had been sufficient contacts with the United States, defendant could have been served through other means provided by Rule 4 Fed.R.Civ.P. for in-state service another example of why the distinction in the personal jurisdiction analysis is necessary.

**13.** The pertinent part of that section reads: "[e]xecutes by himself or through his agent tortious acts within Puerto Rico."

*id.* at 18, and of the relevance of this fact to the application of other legal tests, i.e., accrual of the cause of action for statutes of limitation *id.* at p. 20 n. 5, the introduction of this standard in such absolute form to the context of a personal jurisdiction analysis runs counter to the foreseeability element, which is so much a part of this analysis. *See: Escude v. Ortho,* 619 F.2d 902 (P.R.1980). It would also impose greater inequities to alleged asbestosis causing defendants, given the potential for forum shopping compared to the conveniences it may offer asbestosis claimants. These conveniences are far from the inequitable situations that the application of the manifestation theory to other legal tests was meant to remedy. We, therefore, hold that Prudential could not be found to have committed a tort "within Puerto Rico" so as to enable third-party plaintiff to attach personal jurisdiction over them pursuant to Rule 4.7(a)(2).

█ As to the claim that personal jurisdiction could be exercised over Prudential under Rule 4.7(a)(4), it should be noted that this was not pleaded in the third-party complaint and third-party plaintiff has not adequately refuted Prudential's assertion that they do not carry out any of the type of activities mentioned in that particular section. The party claiming the existence of jurisdiction must "prove the facts necessary to sustain jurisdiction." *American Freedom Train Foundation v. Peter L. Spurney,* 747 F.2d 1069 (1st Cir.1984). Furthermore, in view of our construction of the "arises as a result of" language in Rule 4.7, any resort to the situations enumerated in the rule must show that the cause of action arose from the performance of such activities.

For the reasons stated, the third-party complaint filed against Prudential is hereby DISMISSED for lack of in personam jurisdiction. Partial judgment shall be entered by separate order.

SO ORDERED.