William M. GILDAY, Jr., Plaintiff,

v.

Robert H. QUINN, et al., Defendants.

Civ. A. No. 74-4169-C.

United States District Court,
D. Massachusetts.

Sept. 28, 1982.

Scott P. Lewis, Palmer & Dodge, Boston, Mass., for William M. Gilday, Jr.

Ralph Child, Asst. U. S. Atty., John W. Bishop, Sp. Asst. Atty. Gen., Dept. of Correction, Joanna Conley, Boston, Mass., for Robert H. Quinn, et al.

## MEMORANDUM

CAFFREY, Chief Judge.

This suit was filed in 1974 by William M. Gilday, Jr. an inmate at the Massachusetts Correctional Institution at Walpole ("MCI Walpole"), against eight individuals, each of whom was or is a state or federal official. Each defendant has been sued in both his individual and official capacities. Plaintiff claims that he has been one of the prime targets of two operations, GILROB and STOP, which were implemented by the Federal Bureau of Investigation (FBI) in conjunction with various state law enforcement and prison authorities, as part of the FBI's effort to gather information about the robbery of a Boston bank on September 23, 1970. Plaintiff was convicted for murder of a Boston policeman who was shot and killed during the course of that robbery. Plaintiff claims that through operations GILROB and STOP, the defendants have conspired to violate his constitutional rights, as well as rights created by federal and state statutes, by illegally intercepting his oral and written communications and confiscating his legal work papers. Plaintiff seeks legal, equitable, and injunctive relief, including compensatory, punitive, and statutory damages.

The two federal defendants, current FBI Director William Webster ("Webster") and past FBI Director Clarence Kelly ("Kelly") have filed a motion to dismiss the complaint to the extent that it is against them in their individual capacities on the ground that this Court lacks personal jurisdiction over them in their individual capacities. Kelly has also moved to have the complaint dismissed

as against him in his official capacity as well, on the ground that although he was director of the FBI when this suit was filed, he has since resigned from that position, and has been replaced by defendant Webster. Accordingly, Kelly argues, Webster should be "automatically substituted as a party" for Kelly under Fed.R.Civ.P. 25(d)(1), and the complaint should be dismissed against Kelly inasmuch as it applies to him in his "official" capacity.

After considering the briefs and oral arguments of all the parties on this motion, I rule that the complaint should be dismissed against Kelly in its entirety, and against Webster insofar as it. applies to him in his personal capacity.

The parties agree that since no federal statute grants this Court personal jurisdiction over both of these out-of-state individuals, the Court under Fed.R.Civ.P. 4(e) must look to the Massachusetts "long-arm" statute, M.G.L. c. 223A, § 3, to determine whether personal jurisdiction here exists. That statute gives courts within the Commonwealth personal jurisdiction over any individual "who acts directly or by an agent" with respect to a cause of action arising from that person's

(a) transacting any business in this Commonwealth;

.       .       .       .       .

(c) causing tortious injury by an act or omission in this Commonwealth; [or]

(d) causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly ... engages in any ... persistent course of conduct ... in this Commonwealth.

The defendants argue that because the plaintiff has not alleged in his complaint that either Webster or Kelly personally took any action in Massachusetts with respect to alleged agreement to violate Gilday's rights, and because the plaintiff has not made any allegation or showing that the unnamed agents who allegedly carried out the alleged agreement were the personal representatives of Webster or Kelly, the

Massachusetts long-arm statute by its own terms does not apply. The defendants each submitted an affidavit in the form of a signed "declaration" in which each stated that he had not been a physical resident of Massachusetts at any time during the pendency of this action, and that each had been physically present in the state five times during his tenure as FBI director, either in connection with speaking engagements before professional or academic groups, social engagements, or intermediate stops in Massachusetts in route to other destinations. Both Webster and Kelly stated that they had not personally or through agents engaged in any of the conduct alleged in the second amended complaint.

Tacitly admitting that this Court lacks personal jurisdiction over Kelly and Webster under the traditional long-arm statute analysis,* plaintiff argues that personal jurisdiction exists over Kelly and Webster under the novel "conspiracy" theory of personal jurisdiction. According to one court which has recognized the conspiracy theory,

> a fair statement of [the theory] would be that while the mere presence of a conspirator within the forum state is not sufficient to permit personal jurisdiction over [non-resident] co-conspirators, certain additional connections between the conspiracy and the forum state will support exercise of jurisdiction over co-conspirators. . . . These additional connections exist where substantial acts in furtherance of the conspiracy were performed in the forum state and the co-conspirator knew or should have known that the acts would be performed in the forum state.

*Gemini Enterprises, Inc. v. WFMY Television Corp.,* 470 F.Supp. 559, 564 (M.D.N.C. 1979) (citation omitted). Plaintiff here argues that both Webster and Kelly were members of a conspiracy or scheme which included unknown agents who, as authorized by Kelly and Webster, or with their

knowledge, acted in Massachusetts with respect to plaintiff's incarceration at MCI Walpole, in furtherance of the GILROB and STOP operations, thereby depriving the plaintiff of his rights. As a result, plaintiff argues, personal jurisdiction over Kelly and Webster exists under the conspiracy theory.

While the conspiracy theory has been adopted in several jurisdictions outside of Massachusetts, the United States Court of Appeals for the First Circuit recently refused in *Glaros v. Perse,* 628 F.2d 679, 682 (1st Cir. 1980) to recognize a conspiracy theory of personal jurisdiction under the Massachusetts long-arm statute. The court in *Glaros,* however, did demonstrate that adequate grounds for dismissing a complaint exist in this Circuit when the conspiracy theory standard as it has been refined by other courts has not been met. Thus, in our case, if the plaintiff cannot allege the elements of the conspiracy theory test, the complaint against Webster and Kelly, individually, may be properly dismissed.

In order to establish grounds for personal jurisdiction under the conspiracy theory, the complaint must allege 1) that a conspiracy to deprive plaintiff of his rights existed; 2) that Kelly and Webster were parties to the conspiracy, and 3) that substantial acts in furtherance of the conspiracy, of which Kelly and Webster were aware or should have been aware, took place in Massachusetts.

The defendants do not deny the existence of the GILROB operation, which is identified in the second amended complaint, or that many FBI agents and law enforcement officers outside of the FBI knew of or were directly involved in this operation; they do claim, however, that there was nothing illegal or unlawful about the operation. I rule that plaintiff's allegations with respect to the illegality of the GILROB operation are sufficient to overcome at this point and only for purposes of this motion to dismiss the *defendants'* general denial of illegality.

---

* Plaintiff also argues that Kelly has waived his right to contest the issue of personal jurisdiction because he submitted an answer to the first amended complaint. Since Kelly received permission to file a new answer or motions which should be filed before the answer at the same time and at the same hearing that plaintiff received permission to file the second amended complaint, I rule that Kelly's answer of the first amended complaint did not constitute a waiver of his right to contest the issue of personal jurisdiction.

There is no dispute over the fact that if illegal acts were executed in furtherance of the GILROB operation, those acts were executed in Massachusetts, the forum state, where the plaintiff has been imprisoned since 1972.

The conspiracy theory as applied to this case breaks down, however, when the plaintiff's allegations of Kelly and Webster's involvement in GILROB are examined. Paragraphs 29 and 38 of the amended complaint allege that according to the plaintiff's "information and belief," Kelly,

in furtherance of an agreement or understanding with the FBI and the [Massachusetts] DOC [Department of Corrections] and otherwise, pursuant to the GILROB program and otherwise, and with the assistance of unknown agents of the FBI and DOC working in Massachusetts under their direct supervision and control, and with the assistance of unknown agents of state and local law enforcement agencies, willfully and knowingly directed, implemented, abetted, procured or permitted the secret and unreasonable interception, use, and disclosure of wire [and mail] communications to and from the plaintiff Gilday.

Paragraphs 30 and 39 allege that Webster engaged in the same conduct as described in paragraphs 29 and 38. These allegations clearly implicate both Kelly and Webster in a conspiracy or scheme to deprive Gilday of his rights. As two federal district courts have ruled, "where the defendant has not controverted with evidence the plaintiff's allegations, the determination of personal jurisdiction [under the conspiracy theory] may be based on whether the plaintiff has pleaded the factual allegations essential for jurisdiction." *Gemini Enterprises, supra,* at 565; *McLaughlin v. Copeland,* 435 F.Supp. 513, 529–33 (D.Md.1977). However, "where the defendant has provided evidence which denies facts essential for assertion of jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant." *Id.* Where the defendant has done more to meet the allegations of the plaintiff with respect to jurisdictional contacts than issue a general denial, a proper manner for a court to proceed in ruling on a motion to dismiss for lack of personal jurisdiction is to "apply . . . a 'threshold' standard, determining only whether the affidavits before the court make a prima facie showing of facts required to sustain jurisdiction over the person of each defendant . . . ." *North American Video Corp. v. Leon,* 480 F.Supp. 213, 215–16 (D.Mass. 1979).

As noted above, the federal defendants have each submitted affidavits in which they state that they have not personally or through agents engaged in any of the conduct alleged in the amended complaint. The plaintiff has responded by submitting his own affidavit, in which he states that the allegations of the amended complaint are "true to the best of my information and belief," and by submitting 16 FBI documents (recovered by him through the Freedom of Information Act) in which the GILROB operation is mentioned, and which purport to be either to or from the FBI Director. These documents do not in any way, shape, or manner support plaintiff's claim that the GILROB operation involved illegal activity. They have apparently been submitted to show that both Kelly and Webster were presented with constant detailed reports about the operation and that they continuously issued directives regarding GILROB to FBI field officers.

In response to these documents, defendants have submitted an affidavit from Special Agent Thomas E. Vornberger of the FBI's Document Classification and Review Section, Records Management Division. According to this affidavit, Agent Vornberger is "responsible for supervision of FBI employees who review FBI files to identify, retrieve and process FBI documents to be produced by the FBI in litigation and related matters;" he also is "completely familiar with the manner in which the FBI maintains its records and [has] personal knowledge of the FBI policy relating to the routing and handling of mail" at FBI headquarters (¶ 2). The gist of Agent Vornberger's

statement is that FBI headquarters daily receives between 2,000 and 8,000 pieces of mail from FBI field officers, and that despite the fact that internal FBI mail may be addressed "To: Director, FBI," such mail is seldom sent to the Director's Office and is seldom seen by the Director unless it is specifically routed to the Director's office by someone responsible for supervising the matter in question. It is also standard practice for all FBI officials, including the Director, to initial all pieces of mail he has seen. None of the documents presented by the plaintiff appear to contain the initials of either federal defendant.

Agent Vornberger also stated that most of the 4,000 to 7,400 pieces of mail which are sent each day from FBI headquarters to FBI field offices is headed "From: Director, FBI." Nevertheless, neither the Director nor anyone in his office sees the majority of FBI mail emanating from FBI headquarters to field offices, according to Vornberger, and the only mail sent from headquarters which normally would be seen by the Director is mail involving policy changes or mail which, by statute or regulation, requires the personal approval of the Director. I rule that Agent Vornberger's affidavit completely undermines plaintiff's assertion that the sixteen FBI documents concerning operation GILROB which he submitted with his affidavit personally implicates either or both of the federal defendants in a conspiracy to deprive him of his rights.

■ We are thus left eight years after plaintiff's institution of this suit with plaintiff's assertion, made by way of affidavit, that the allegations of the Second Amended Complaint which link Kelly and Webster to a conspiracy against him "are true to the best of my information and belief." I rule that this assertion does not present the Court with facts sufficient to allow the Court to exert personal jurisdiction over Kelly and Webster under the conspiracy theory of personal jurisdiction. I also rule plaintiff's request that this Court postpone a decision on the personal jurisdiction question until trial to be unwarranted, for plain-

tiff has had ample opportunity to discover facts sufficient to support a theory of personal jurisdiction during the past eight years, especially in light of the fact that 9,464 pages of material from the FBI's file on operation GILROB (from which the sixteen above-discussed documents were culled) have been made available to him pursuant to his Freedom of Information Act requests. *See* Affidavit of Special Agent Daniel F. Toole (Jan. 15, 1982). I therefore rule that the second amended complaint should be dismissed to the extent that it lies against both Kelly and Webster in their individual capacities.

■ I conclude with the obvious: Fed.R. Civ.P. 25(d)(1) states that "[w]hen a public officer is party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party." Under the plain and clear language of this rule, defendant Kelly, having been sued in his official capacity as Director of the FBI, and having subsequently relinquished that office, may no longer be a party defendant in this case in an official capacity as FBI Director. To the extent that plaintiff sought recovery from Kelly's personal assets, he sued Kelly in his individual capacity. Having shown an insufficient basis to maintain his suit against Kelly in his individual capacity, plaintiff cannot now gain access to Kelly's personal assets by maintaining this suit against him in his official capacity. To the extent that plaintiff's suit is against an officer of the FBI in his official capacity, the suit is against the FBI as an organization, and according to the clear command of Rule 25(d)(1), the current Director of the organization is the proper representative for purposes of this suit. I therefore rule that the second amended complaint should likewise be dismissed against Kelly in his official capacity.

Order accordingly.