**Paul SALVADOR and Walter Salvador, Plaintiffs,**

v.

**Edwin MEESE et al., Defendants.**

**Civ. A. No. 85–3372–G.**

United States District Court, D. Massachusetts.

Aug. 19, 1986.

John J. Loftus, Rockland, Mass., for plaintiffs.

Roy C. Summerlin, Winter Haven, Fla., Richard E. Brody, Morrison, Mahoney & Miller, Boston, Mass., for Meadowood Groves, Harmon Groves, Harmon Brothers and HB & S.

Jacob A. Stein, Robert F. Muse, Stein, Mitchell & Mezines, Washington, D.C., for Eugene M. Propper Lane & Edson.

Eileen O'Brien, Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., Richard Welch, Asst. U.S. Atty., for U.S. Department of Justice.

## OPINION

GARRITY, Judge.

Plaintiffs in this action, Walter and Paul Salvador, claim that they were fraudulently induced to invest in swampland in Florida through misrepresentations concerning the ownership and value of that land. They seek damages from the defendants on various counts including fraud, negligence, conspiracy, a claim pursuant to the Federal

Tort Claims Act, and a claim that their constitutional rights have been violated. The matter now comes before the court upon motions to dismiss by three sets of defendants.[1]

*Background*

The plaintiffs' complaint sets forth a complicated, somewhat bizarre and often vague and irrelevant set of facts as a basis for the defendants' liability. The Salvadors' claims arise primarily out of their dealings with defendant Ernest Keiser. According to the complaint, in 1981 and 1982, Keiser assisted the United States Justice Department in apprehending Edwin Wilson, an ex-CIA agent who had been indicted for illegally providing arms and explosives to the Libyan government. Along with defendant Daniel Drake, Keiser defrauded Wilson, persuading him to invest in a plan to develop Meadowoods, a 2000 acre tract of Florida swampland near Disneyworld, and luring him from Libya to the Dominican Republic to facilitate his arrest by United States authorities.[2]

Plaintiffs claim that they too were defrauded into giving Keiser money for the Meadowoods venture. Keiser allegedly represented to the plaintiffs that he owned the property when in fact he only had, at most, an option to purchase it. Moreover, Keiser told them that Meadowoods was exempt from state development regulations and was worth more than fifteen million dollars. On the basis of these and other alleged misrepresentations, plaintiffs claim that they and other investors from Massachusetts gave 1.1 million dollars to Keiser as an investment in his plan to develop Meadowoods.[3]

In addition to Keiser, the plaintiffs seek relief from three sets of defendants who allegedly participated in or somehow facilitated Keiser's fraudulent activities. The first set of these defendants, a group of nine individuals and eight businesses based in Florida ("the Florida defendants"), are alleged to have provided Keiser with sham documentation regarding his ownership of Meadowoods and the value of that land. The second set of defendants ("the Propper defendants") consists of a Washington, D.C., law firm, Lane & Edson, and Eugene Propper, an attorney at the firm who represented Keiser. Plaintiffs claim that Propper attended a meeting between Keiser and the Massachusetts investors in Boston on August 30, 1982, at which time Propper assured the plaintiffs that Keiser owned Meadowoods and that the property was worth more than fifteen million dollars. Finally, the third set of defendants is comprised of the United States Department of Justice and a group of federal governmental officials ("the federal defendants") which includes the Director of the FBI, the Director and the Chief of Field Operations for the United States Marshal's Service, the Attorney General of the United States, the Assistant Attorney General in charge of the Justice Department's Criminal Division, the United States Attorneys for the District of Columbia, the Southern District of New York, and the Middle District of Florida, and an Assistant United States Attorney for the District of Columbia. The substance of plaintiffs' allegations regard-

---

1. Defendants Ernest Keiser, Daniel Drake, Thomas Howard Huskins, R.L. Uphoff, Uphoff & Huskins, Charles V. Failla, Charles V. Failla & Associates, Inc., John A. MacCurdy, Roy T. Dunn, and Lawrence Scarborough have not filed motions to dismiss. Of these defendants, only Charles V. Failla, Charles V. Failla & Associates, Inc., and John A. MacCurdy have filed answers. However, no proof of service has been filed with the court with respect to any of the defendants named in the plaintiffs' complaint.

2. Upon his arrival in the Dominican Republic, authorities there sent Wilson to New York where he was arrested.

3. In its typically vague fashion, the complaint fails to specify how much money plaintiffs invested, the dates upon which they invested, and what Keiser told them they were getting for their money. Only upon the court's prodding at an April 14, 1986 hearing did plaintiffs' counsel reveal that Paul Salvador had invested $75,000 of his own money and that he and Walter Salvador had personally guaranteed loans of over one million dollars to other Massachusetts investors, enabling these investors to invest in Meadowoods.

ing these defendants is that they negligently hired and supervised Keiser and intervened in criminal prosecutions against Keiser in New York and Florida, affording him the opportunity to defraud the plaintiffs and escape from the United States. Keiser is currently a fugitive from justice.

*Issues*

A. The Florida Defendants [4]

The Florida defendants set forth several grounds for dismissing plaintiffs' complaint against them, including failure to state a claim upon which relief can be granted, failure to plead fraud with particularity, and a lack of personal jurisdiction. We need only address this last ground inasmuch as the court finds it does not have jurisdiction over these defendants.

In determining whether it has personal jurisdiction over out-of-state defendants the court must engage in a two-step inquiry. First, since no federal statute confers personal jurisdiction, we must determine whether the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, confers personal jurisdiction, and, if it does, whether the exercise of such jurisdiction would comport with the due process requirement that the defendants have certain minimum contacts with Massachusetts. *Hahn v. Vermont Law School,* 1 Cir.1983, 698 F.2d 48, 50. Moreover, inasmuch as defendants have challenged this court's jurisdiction, it is the plaintiffs' burden to establish sufficient facts to support our exercise of personal jurisdiction, *American Freedom Train Foundation v. Spurney,* 1 Cir.1984, 747 F.2d 1069, 1075, and in order to satisfy that burden, they "must go beyond the pleadings and make affirmative proof."

*Chlebda v. H.E. Fortha & Bro., Inc.,* 1 Cir.1979, 609 F.2d 1022, 1024.

Although not specified in their complaint or in their memorandum opposing the motions to dismiss, the plaintiffs presumably [5] premise the court's personal jurisdiction on § 3(c) of the Massachusetts long-arm statute, which provides:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> .   .   .   .   .
>
> (c) causing tortious injury by an act or omission in this commonwealth;

M.G.L. c. 223A, § 3(c). Except for Joe L. Sharit, none of the Florida defendants are alleged to have had any direct contact with Massachusetts. Instead, plaintiffs maintain that the Florida defendants, including Sharit, are amenable to jurisdiction in this state because they caused tortious injury through the acts in Massachusetts of their agents or coconspirators, James Cheyunski and the defendants Propper and Keiser. Moreover, they contend that the jurisdiction over Sharit is conferred by the fact that he made misrepresentations to Paul Salvador in a March 1984 telephone conversation while Salvador was in Massachusetts.

Plaintiffs, however, fail to establish jurisdiction based on the actions of agents or co-conspirators. For example, neither the complaint nor the exhibits offered by plaintiffs in support of jurisdiction indicate that Cheyunski acted in Massachusetts. Again, plaintiffs have the burden of establishing personal jurisdiction over the defendants, and they must go beyond mere

---

**4.** A number of Florida defendants have not filed motions to dismiss. Accordingly, the court's discussion of these matters pertains solely to those defendants who have moved for a dismissal: Joe L. Sharit, Jack Straughn, Straughn, Sharit, Bunn & Chilton, P.A., S & S Profit Sharing Trust, HBS & S Associates, Meadow Woods (to the extent Meadow Woods is coextensive with Joe L. Sharit and Jack Straughn), Meadowood Groves, Inc., Harmon Groves, Inc., Harmon Brothers, Inc., and William W. Howard.

**5.** Neither the complaint nor plaintiffs' memorandum in opposition to dismissal allege that

any of the Florida defendants had regular dealings in Massachusetts. Consequently, § 3(d) of the long-arm statute would appear to be inapplicable inasmuch as it provides for personal jurisdiction over an individual, "causing tortious injury in this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." M.G.L. c. 223A, § 3(d).

allegations to do so. See *Chlebda, supra.* Plaintiffs have submitted a March 6, 1986 letter from Cheyunski, who is the cousin of Paul Salvador's wife, to plaintiffs' counsel purportedly as proof of Cheyunski's agency, but that letter makes no mention of any acts taken by Cheyunski in Massachusetts. Quite apart from the dubious assertion that Cheyunski served as the Florida defendants' agent, therefore, his actions fail to confer personal jurisdiction because they do not connect the Florida defendants to Massachusetts.

Similarly, the alleged acts of defendants Propper and Keiser fail to establish jurisdiction in Massachusetts over the Florida defendants. In substance, the plaintiffs argue that Keiser and Propper buttressed the misrepresentations that they were making to defraud the Massachusetts investors by using documentation provided by Sharit and other Florida defendants. However, even if true, and again there is no affirmative proof of this allegation, the fact that Keiser and Propper used documents in Massachusetts provided by Florida defendants does not establish personal jurisdiction. The acts of Keiser and Propper in Massachusetts would serve as the basis for the exercise of jurisdiction over the Florida defendants only if Keiser and Propper were agents of these defendants. See M.G.L. c. 223A, § 3. "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1958). Here, plaintiffs offer no proof that Keiser and Propper were acting either on behalf of the Florida defendants, subject to their control or with their consent. Consequently, the court does not consider Keiser and Propper to be agents of the Florida defendants for jurisdictional purposes.

Plaintiffs also argue that the Florida defendants are subject to jurisdiction in Massachusetts because they were involved in a conspiracy with Keiser and Propper. While courts in several circuits have adopted the position that acts by coconspirators in the forum state may confer personal jurisdiction over an out-of-state co-conspirator, see, e.g., *Gemini Enterprises, Inc. v. WFMY Television Corp.*, M.D.N.C. 1979, 470 F.Supp. 559, 564–65, *Socialist Workers Party v. Attorney General*, S.D. N.Y.1974, 375 F.Supp. 318, 321–11, *Mandelkorn v. Patrick*, D.D.C.1973, 359 F.Supp. 692, 694–97, courts in this jurisdiction have yet to find this conspiracy theory of personal jurisdiction cognizable under the Massachusetts long-arm statute. See *Glaros v. Perse*, 1 Cir.1980, 628 F.2d 679, 682, *Gilday v. Quinn*, D.Mass.1982, 547 F.Supp. 803, 805. Moreover, even were we to adopt such a theory, the facts of this case as alleged by the plaintiffs do not sufficiently link the Florida defendants to a conspiracy to defraud Massachusetts investors. Other than broad, general and conclusory allegations of conspiracy, the complaint sets forth no facts indicating that the Florida defendants other than Sharit had any awareness of the Massachusetts investors let alone that they conspired to defraud these investors or should have known that Keiser and Propper were making misrepresentations to them in Massachusetts.[6] Accordingly, there are no facts set forth in the complaint warranting the exercise of personal jurisdiction over these Florida defendants even under a conspiracy theory of jurisdiction. See *Gilday, supra* at 805. ("In order to establish grounds for personal jurisdiction under the conspiracy theory, the complaint must allege 1) that a conspiracy to deprive plaintiff of his rights existed, 2) that [defendants] were parties to the conspiracy, and 3) that substantial acts in furtherance of the conspiracy, of which [defendants] were aware or should have been aware, took place in Massachusetts.")

---

**6.** In their opposition to the Florida defendants' motion to dismiss, the plaintiffs do make numerous allegations concerning how the Florida defendants specifically assisted Keiser. However, none of these allegations link the Florida defendants to a scheme to defraud Massachusetts investors. In fact, the exhibits submitted in support of plaintiffs' opposition do more to link these defendants to New York than to Massachusetts.

■ Nor are the plaintiffs' allegations concerning Sharit sufficient to subject him to jurisdiction in Massachusetts. The complaint alleges that Sharit had contact with the Massachusetts investors through a telephone conversation he had with Paul Salvador and through his contact with James Cheyunski described above. As already indicated, Sharit's dealings with Cheyunski fail to create a basis of jurisdiction over him or any other Florida defendant. Furthermore, the telephone conversation with Paul Salvador does not establish this court's personal jurisdiction over Sharit. According to the complaint, in March of 1984, while in Massachusetts, Salvador talked to Sharit on the telephone, and Sharit assured him that Meadowoods was worth more than fifteen million dollars. The complaint, however, does not allege that this conversation induced the plaintiffs to invest more money in Meadowoods. Indeed, the complaint is so vague about plaintiffs' investments in Meadowoods that the Sharit phone call may have occurred after the plaintiffs had invested their money. Insofar as the complaint does not assert that the plaintiffs relied upon Sharit's representations made in the telephone conversation to their detriment, it fails to allege that Sharit committed a tort in Massachusetts. See *Kolikof v. Samuelson,* D.Mass.1980, 488 F.Supp. 881, 883. ("... the tort of misrepresentation is not accomplished by false statements alone. The commission of the tort is not complete until the misinformation is relied upon.") Absent sufficient allegations of tortious conduct, § 3(c of the Massachusetts long-arm statute is inapplicable.

Wherefore, the motions to dismiss filed by the Florida defendants are granted.

B. Propper defendants

■ The Propper defendants also move to dismiss on the ground that this court lacks personal jurisdiction over Eugene Propper.[7] We disagree. The complaint alleges that Propper and Keiser met with the plaintiffs and other Massachusetts investors in Boston on August 30, 1982, that at this meeting Propper stated that Keiser owned Meadowoods even though Propper knew this was false, and that the misrepresentation induced detrimental reliance in Massachusetts.[8] The Propper defendants do not dispute that Propper was in Boston on August 30, 1982, and plaintiffs have submitted the affidavit of Paul Salvador and several exhibits in support of their allegations that Propper knowingly misrepresented that Keiser owned Meadowoods. Consequently we find that plaintiffs have provided sufficient proof of Propper's tortious activity in Massachusetts to support the exercise of personal jurisdiction over the Propper defendants pursuant to § 3(c) of the Massachusetts long-arm statute.

The Propper defendants maintain that even if they are amenable to suit in Massachusetts pursuant to the state long-arm statute, the exercise of jurisdiction over them based on Propper's isolated contact with Massachusetts on August 30, 1982 would violate the due process guarantee of the Constitution. As expounded upon by *International Shoe Co. v. Washington,* 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 and its progeny, the Constitution requires that the defendants' contacts with the forum "make it reasonable and not unfair to have [them] defend against a suit there." *Hahn, supra* at 51. In resolving this question of fairness, "the critical inquiry ... is whether there is 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Vencedor Mfg. Co. v. Gougler Industries,* 1 Cir.1977, 557 F.2d 886, 890, quoting *Hanson v. Denckla,* 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. In other words, the court must determine whether "the defendant's conduct and connection with the forum State are

7. Propper's law firm, Lane & Edson, joins in Propper's motion to dismiss, asserting only that the court lacks personal jurisdiction over the law firm because it lacks personal jurisdiction over Propper.

8. According to the affidavit of Paul Salvador, one of the Massachusetts investors gave Keiser a $100,000 check at the August 30, 1982 meeting.

such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 1980, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490. The Propper defendants argue that Propper's one-day visit to Boston is too isolated an event to establish that the defendants purposefully availed themselves of the privileges of conducting activities in Massachusetts, and therefore this contact is insufficient to confer jurisdiction over them consistently with the Constitution. However, although isolated, Propper's activities in Massachusetts were allegedly intentional—plaintiffs allege he made misrepresentations in Massachusetts with the intent of defrauding Massachusetts investors. Having taken such purposeful action within Massachusetts, Propper should reasonably have anticipated being brought into this forum. See *Murphy v. Erwin-Wasey, Inc.,* 1 Cir.1972, 460 F.2d 661, 664 (in case involving fraudulent misrepresentation, element of intent overcomes constitutional objections to assertion of jurisdiction over out-of-state defendant).

The Propper defendants also invoke the "fiduciary shield doctrine" as an obstacle to the assertion of jurisdiction in Massachusetts over Propper in his individual capacity. This equitable doctrine operates to shield a corporate employee from a state's exercise of personal jurisdiction over him as an individual when the employee acts within that state solely in his capacity as fiduciary of the corporation. As one court has explained, "The underpinning of the fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Marine Midland Bank, N.A. v. Miller,* 2 Cir.1981, 664 F.2d 899, 902. Although recognizing that no courts in Massachusetts have adopted the fiduciary shield doctrine in applying the state long-arm statute, the Propper defendants argue that the court should refrain from exercising jurisdiction over Propper in his individual capacity because his acts in Massachusetts were taken solely in his capacity as an

employee of his law firm, Lane & Edson. However, even were Massachusetts to adopt the fiduciary shield doctrine, its application would not be warranted by the facts alleged in the complaint. Rather than being a mere conduit through which his employer acted in Massachusetts, Propper is alleged to have intentionally misrepresented facts to Massachusetts investors, thereby purposefully injecting himself into this forum. Cf. *Marine Midland Bank, supra* at 902–903 ("the doctrine should be applied where the tort alleged is negligent misrepresentation and the statement attributed to the corporate agent consisted of no more than confirmations and reiterations of the corporation's own statements.") Additionally, the professional conduct of a law firm is essentially different from the running of the usual business enterprise. Propper is a member of the bar with professional obligations that supersede fidelity to an employer's objectives. Accordingly, the Propper defendants' motion to dismiss is denied.

**C. Federal Defendants**

The federal defendants assert several bases warranting dismissal of the complaint against them. Before examining these defendants' grounds for the dismissal of specific claims lodged against them, the court notes on a more general level that two of the federal defendants seek dismissal because the complaint fails to allege any wrongdoing on their part. In fact, although the complaint names William Webster, the Director of the FBI, and Robert Merkle, the United States Attorney for the Middle District of Florida, as defendants, it makes no allegations concerning their conduct. Accordingly, the federal defendants motion to dismiss is granted with respect to these two defendants for failure to state a claim upon which relief can be granted.

**1. Common Law Claims**

The plaintiffs seek relief from the federal defendants on the common law grounds of negligence and conspiracy.

They claim that in order to apprehend Edwin Wilson, several federal defendants negligently approved the employment of Keiser and that they are therefore liable for the damage inflicted by Keiser upon the plaintiffs. Also the complaint alleges that defendants Howard Safir, the Chief of Field Operations for the United States Marshal's Service, Rudolph Giuliani, the United States Attorney for the Southern District of New York, and Lawrence Barcella, the Assistant United States Attorney for the Middle District of Florida, enabled Keiser to avoid prosecution by intervening on his behalf in connection with criminal charges pending against him in New York and Florida. Specifically, plaintiffs allege that in November 1983 Keiser was under indictment in Westchester County, New York for grand larceny and issuing a false financial statement in connection with Meadowoods and a scheme to defraud a New York investor. On November 28, 1983, allegedly at Safir's request, Giuliani wrote a letter to the Westchester County District Attorney seeking a dismissal of the indictment in light of Keiser's cooperation with the federal government and with the caveat that a civil action against Keiser would be disposed of favorably to the defrauded New York investor. Although the complaint fails to state whether Keiser was prosecuted on these charges, he apparently was not. Plaintiffs also claim that the federal defendants are responsible for allowing Keiser to flee to West Germany after he had been indicted and arrested by the federal government in Florida in July 1984 on charges of extortion. The complaint alleges that after Keiser's arrest, defendant Barcella filed an affidavit in support of Keiser's release on bail. When Keiser was subsequently released on bail, he left the country.

These facts fail to state the requisite elements of these common law claims upon which plaintiffs seek to establish the federal defendants' liability. For example, even were we to assume that Keiser's hiring and supervision was negligent, the complaint fails to set forth facts demonstrating how that negligence caused plaintiffs' injury. There is nothing in the complaint providing a causal link between the alleged negligent conduct, the federal defendants' employment of Keiser to apprehend Wilson, and the fact that Keiser subsequently defrauded the plaintiffs. Keiser acted on his own in defrauding the plaintiffs; there are no allegations that Keiser held himself out to the plaintiffs as an agent of the federal defendants or that he was acting with their assistance. In short, the complaint fails to allege facts establishing that but for Keiser's employment by the federal government, plaintiffs would not have been injured.

With respect to plaintiffs' claims against defendants Safir, Giuliani, and Barcella for their intervention in criminal proceedings against Keiser, the causal chain is too attenuated to establish liability. As set forth in the complaint, the causal link between these federal defendants' acts and plaintiffs' injury is a tortuous road of conjecture, requiring us to assume that were it not for the defendants' intervention, Keiser would have been prosecuted, convicted and imprisoned, and therefore unable to defraud the plaintiffs.[9] Under such circumstances, the acts of Safir, Giuliani, and Barcella as alleged in the complaint do not have that "reasonably close causal connection," see W. Prosser, Law of Torts § 30 at 143 (4th ed. 1971), necessary to establish that the plaintiffs' injury was proximately caused by defendants' conduct. See *Delta Air Lines, Inc. v. United States*, 1 Cir. 1977, 561 F.2d 381, 389.

Furthermore, the facts alleged by the complaint fail to set forth what plaintiffs denominate as their conspiracy claim. Massachusetts does recognize various theories of concert of action and joint venture through which an individual may be held liable for tortious injury caused by another party. See generally, *Payton v. Abbott*

**9.** Here again the vague nature of the complaint also serves to undermine plaintiffs' claim. There is nothing in the complaint to indicate that plaintiffs invested money in Meadowoods after November 1983 or July 1984, the points in time when the intervention of Giuliani and Barcella purportedly enabled Keiser to defraud the plaintiffs.

*Labs,* D.Mass.1981, 512 F.Supp. 1031.[10] However, in the instant case, the plaintiffs do not allege any sort of agreement or partnership between the federal defendants to defraud the plaintiffs nor do they allege that the federal defendants assisted Keiser with the intent of furthering Keiser's fraudulent scheme. Consequently, plaintiffs' conspiracy claim fails to state a claim upon which relief can be granted. See *Payton, supra* at 1035.

█ In the alternative, even if plaintiffs' complaint adequately set forth the common law claims alleged, the federal defendants would nevertheless be immune from liability stemming from their tortious conduct. A federal official is absolutely immune from common law tort suits "as long as the conduct in question falls within the 'outer perimeter of [the official's] ... line of duty.' " *Ricci v. Key Bancshares of Maine, Inc.,* 1 Cir.1985, 768 F.2d 456, 462 quoting *Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434, see *Krohn v. United States,* 1 Cir.1984, 742 F.2d 24, 29. Plaintiffs argue that the federal defendants' actions did not fall within the scope of their respective authorities, inasmuch as the employment of Keiser and subsequent invervention on his behalf were not prosecutorial tasks but rather were directed toward apprehending fugitives from justice. However in the context of a common law tort suit brought pursuant to 42 U.S.C. § 1983, the scope of an official's authority is read fairly expansively. *Ricci, supra* at 462, cf. *Briggs v. Goodwin,* D.C. Cir.1977, 569 F.2d 10 (official's authority narrowly defined when constitutional tort alleged). Indeed, in *Krohn v. United States,* the First Circuit afforded absolute immunity to a federal prosecutor from a suit which alleged that he had reached an

agreement with the plaintiff's attorney enabling the prosecutor to gather evidence and the attorney to steal several thousand dollars from plaintiff's safe deposit box: "Even if ... striking a deal with defense counsel in order to obtain evidence which appears detrimental to defendant is of questionable propriety, the ultimate end of gathering evidence for a criminal prosecution was within the official's powers, and the means chosen were not 'manifestly or palpably beyond [their] authority.' " *Krohn, supra* at 30, quoting *Spalding v. Vilas,* 1895, 161 U.S. 483, 486, 16 S.Ct. 631, 632, 40 L.Ed. 780. Here, the federal defendants' use of Keiser to apprehend Wilson and other fugitives falls within their investigative function and seems to provide a more compelling claim to absolute immunity than *Krohn,* inasmuch as the instant complaint does not allege that the federal defendants had an understanding with Keiser vis-a-vis his efforts to defraud the plaintiffs. Accordingly, on the several grounds enumerated herein, the federal defendants' motion to dismiss with respect to plaintiffs' common law claims is granted.

### 2. FTCA Claim

█ The plaintiffs' claim against the federal defendants[11] pursuant to the Federal Tort Claims Act ("FTCA") is also fatally flawed in several respects. The failure of the complaint to allege a sufficient causal link between the federal defendants' conduct and plaintiffs' injury, for example, would appear to defeat the FTCA claim. However, the court does not reach the substantive merits of this claim because it lacks subject matter jurisdiction.

The FTCA constitutes a limited waiver of sovereign immunity, and "the terms of [the

---

10. In this regard Massachusetts follows the Restatement (Second) of Torts § 876(a) and (b) which provide:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
(a) does a tortious act in concert with the other pursuant to a common design with him, or
(b) knows that the other's conduct constitutes a breach of duty and gives substantial assist-

ance or encouragement to the other so to conduct himself ...
Massachusetts also recognizes a joint venture theory of liability for individuals associated in a business activity. See *Payton, supra* at 1034–35.

11. While the complaint seeks to establish the liability of the ten individual federal defendants based on the FTCA, the United States is the only proper defendant in an action brought pursuant to the FTCA. See 28 U.S.C. § 1346(b).

sovereign's] consent to be sued in any court define that court's jurisdiction." *United States v. Testan,* 1976, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114, quoting *United States v. Sherwood,* 1941, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058. One of the jurisdictional terms of the FTCA requires that before an action against the United States may be instituted, the claimant must submit his claim to the appropriate federal agency and await either final disposition by the agency or the passage of six months without such final disposition. See 28 U.S.C. § 2675(a). Here, plaintiffs submitted a claim to the Attorney General on August 26, 1985 but filed their complaint in this court two days later, before any final disposition had been reached by the Department of Justice. Plaintiffs' failure to comply with the FTCA's jurisdictional prerequisite defeats this court's subject matter jurisdiction. See *GAF Corp. v. United States,* D.D.C. 1984, 593 F.Supp. 703, 706 ("if the complaint is prematurely filed, a court cannot wait until the six-month period elapses and then assert jurisdiction; it may assert jurisdiction over a case only where the complaint is filed after the six-month period.")

The court's subject matter jurisdiction over plaintiffs' claim is also precluded by 28 U.S.C. § 2680. This section provides that the United States' consent to be sued does not extend to claims, *inter alia,* based upon a federal employee's performance of a discretionary function. See 28 U.S.C. § 2680(a). Here, the source of the plaintiffs' claim, the federal defendants' decision to employ Keiser to apprehend fugitives, is a discretionary function. See *Ostera v. United States,* 11 Cir.1985, 769 F.2d 716 (decision to use particular person as informant for law enforcement purposes is policy judgment requiring exercise of discretion and is therefore not actionable under the FTCA). Consequently, the court does not have jurisdiction to hear this claim, and the federal defendants' motion to dismiss with respect to plaintiffs' FTCA claim is granted.

### 3. Constitutional Claim

▮ Finally, the plaintiffs claim that the federal defendants deprived them of property without due process of law, in violation of the Fifth Amendment of the Constitution by interfering with the criminal prosecution of Keiser and allowing him to defraud the plaintiffs. As with the rest of plaintiffs' claims against these defendants, this constitutional claim is premised on the causal connection between government action and the plaintiffs' loss of property, a premise which the court does not find substantiated by the allegations of the complaint. Furthermore, the complaint does not allege that the federal defendants acted with the intent of depriving plaintiffs of their property but rather that the plaintiffs' loss was caused by the federal defendants' negligence. As the Supreme Court recently concluded, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams,* 1986, —— U.S. ——, 106 S.Ct. 662, 663, 88 L.Ed.2d 662, see *Davidson v. Cannon,* 1986, —— U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677. Accordingly, the federal defendants' motion to dismiss with respect to plaintiffs' constitutional claim is granted.

### Conclusion

In summary, the motions to dismiss of Joe L. Sharit, Jack Straughn, Straughn, Sharit, Bunn & Chilton, P.A., S & S Profit Sharing Trust, HBS & S Associates, Meadow Woods (to the extent Meadow Woods is coextensive with Joe L. Sharit and Jack Straughn), Meadowood Groves, Inc., Harmon Groves, Inc., Harmon Brothers, Inc., and William W. Howard are granted for this court's lack of personal jurisdiction. The motion to dismiss of the federal defendants is granted for failure to state a claim upon which relief can be granted and for a lack of subject matter jurisdiction over the plaintiffs' FTCA claim. The motion to dismiss of Eugene Propper and Lane & Edson, however, is denied.