Alex C. GLAROS, Plaintiff, Appellant,

v.

Richard PERSE et al., Defendants,
Appellees.

No. 79–1382.

United States Court of Appeals,
First Circuit.

Submitted Jan. 11, 1980.

Decided Aug. 12, 1980.

Alex C. Glaros on brief pro se.

Francis X. Bellotti, Atty. Gen., Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Bureau, and Roberta Thomas Brown, Asst. Atty. Gen., Boston, Mass., on brief for appellees, Commonwealth of Massachusetts et al.

Richard C. Minzner and Rodney, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, N. M., on brief for appellees, State of New Mexico et al.

Gerald A. Sherwin, County Counsel and Michael N. Garrigan, Chief Deputy County Counsel, Stockton, Cal., on brief for appellee, San Joaquin Delta College.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Alex Glaros appeals the dismissal of the first amended complaint he filed in an action under 42 U.S.C. § 1983. Glaros sued some twenty-six persons and entities in the federal district court of Massachusetts, alleging three types of civil rights violations: (1) unlawful surveillance of his activities, (2) unlawful maintenance or dissemination of false information about him, and (3) unlawful arrest. In essence, Glaros claimed that FBI agents began investigating him in 1969, while he was attending San Joaquin Delta College in California, and that he was subjected to further surveillance and to harassment by police when he moved to New Mexico in 1971 and to Massachusetts in 1975.

Before discussing whether the dismissal of Glaros' action was proper, we note that in his brief and reply brief Glaros incorporated many factual allegations not contained in his first amended complaint. Glaros defends his inclusion of these additional allegations on the ground that the district court denied him leave to further amend his complaint. Nevertheless, we must disregard these additional allegations, because in reviewing the dismissal of a complaint, our focus is necessarily limited to the allegations contained in the complaint itself. *Litton Industries, Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir. 1978). Whether the district court erroneously denied leave to amend is a separate issue that we shall address after appraising the sufficiency of the complaint.

### The Out-Of-State Defendants

We first consider the complaint as it relates to out-of-state defendants. The out-of-state governmental entities against which appeals are still pending are: San Joaquin Delta College (a California community college), the State of New Mexico, the City of Albuquerque, and Bernalillo County (in New Mexico).[1] Glaros also sued Rick Brown, who Glaros alleged was a narcotics agent he met at San Joaquin Delta College.[2]

The district court properly held that it lacked personal jurisdiction over the out-of-state governmental entities. Assuming that a district court can, in some circumstances, obtain personal jurisdiction over an out-of-state governmental entity,[3] that was not accomplished here.

Glaros contends that personal jurisdiction over the out-of-state defendants was

---

1. Glaros advised the district court that he would not pursue an appeal from the dismissal as to San Joaquin County. In this court, Glaros agreed to the dismissal of appeals against the following California defendants: the State of California, the City of Lodi, and the City of Stockton. In his reply brief Glaros conceded that the State of New Mexico should not be a defendant, but the appeal as to New Mexico has not been formally dismissed. Also in his reply brief, Glaros attempted to add two Albuquerque police officers as defendants; this cannot be done on appeal.

2. Brown was mentioned in Glaros' statement of issues, but a document later filed with this court (a motion to dismiss some defendants) creates doubt whether Glaros is pressing his appeal against Brown.

3. 4 C. Wright and A. Miller, Federal Practice and Procedure, Civil: § 1109, at 430–33 (1969 ed.); *see United States Steel Corp. v. Multistate Tax Comm'n*, 367 F.Supp. 107, 117–20 (S.D.N.Y.1973). *But see Clark County, Nev. v. City of Los Angeles, Cal.*, 92 F.Supp. 28, 31 (D.Nev.1950).

obtained via the Massachusetts long-arm statute, Mass.Gen.Laws, c. 223A. *See* Fed. R.Civ.P. 4(e). But Glaros failed to allege facts that, if proved, would confer such long-arm jurisdiction over the out-of-state governmental entities. There were, for example, no concrete allegations in his complaint that these defendants transacted business in Massachusetts or caused tortious injury by an act or omission in Massachusetts, *see* Mass.Gen.Laws, c. 223A, § 3(a) and (c), or engaged in other activity within the statute, *see, e.g., id.* (d).

Glaros asserts, however, that long-arm jurisdiction existed by virtue of a conspiracy between all defendants. It is true that some courts have recognized a "conspiracy theory of personal jurisdiction," whereby jurisdiction can be obtained over out-of-state defendants who have conspired with in-state defendants. *E.g., Gemini Enterprises, Inc. v. WFMY Television Corp.,* 470 F.Supp. 559, 564–65 (M.D.N.C.1979); *Socialist Workers Party v. Attorney General,* 375 F.Supp. 318, 321–22 (S.D.N.Y.1974); *Mandelkorn v. Patrick,* 359 F.Supp. 692, 694–97 (D.D.C.1973). But, to sustain jurisdiction over an out-of-state co-conspirator these courts required something more than the presence of a co-conspirator within the forum state, such as substantial acts performed there in furtherance of the conspiracy and of which the out-of-state co-conspirator was or should have been aware. See discussion in *Gemini Enterprises, Inc. v. WFMY Television Corp., supra,* at 564. Glaros' allegations were deficient in this regard. His allegations of conspiracy were purely conclusory and did not specifically link the out-of-state governmental defendants to acts committed within Massachusetts. There were, for example, no claims that the out-of-state governmental defendants arranged to have information transmitted to Massachusetts or acted through Massachusetts agents in any way. Even if we were to recognize a conspiracy theory of personal jurisdiction under the Massachusetts long-arm statute, we could not regard Glaros' conspiracy allegations as sufficient to warrant the exercise of personal jurisdiction over the out-of-state governmental defendants.[4]

For the same reasons, we agree with the district court that it lacked personal jurisdiction over Rick Brown. The only precise allegation about Brown concerned a statement Brown supposedly made to Glaros in New Mexico. Apart from general allegations of conspiracy, there was nothing to connect Brown to the Massachusetts defendants or to Massachusetts, and therefore nothing to support personal jurisdiction over him.

As to the State of New Mexico, we agree with the district court that dismissal was also required because a state may not be sued in federal court under 42 U.S.C. § 1983. *Quern v. Jordan,* 440 U.S. 332, 337–45, 99 S.Ct. 1139, 1143–1158, 59 L.Ed.2d 358 (1979).* With respect to the out-of-state municipal defendants, the district court was likewise correct that no § 1983 claim was stated because Glaros did not allege these defendants had an official policy or custom that led to the deprivation of his constitutional rights. *Monell v. De-*

---

4. We think Glaros' failure to pinpoint a connection between the out-of-state defendants and specific acts in Massachusetts adequately distinguishes this case from *Mandelkorn v. Patrick,* 359 F.Supp. 692 (D.D.C.1973), on which Glaros relies. In *Mandelkorn,* there were not only allegations of a wide-ranging conspiracy (to convert the plaintiff from adherence to a religious sect) but also specific allegations that the defendants conspired to commit at least one overt act in the District *in furtherance of the conspiracy* (the assault, battery and imprisonment of the plaintiff in the District so that he could be taken against his will to Florida). *Id.* at 694–97 & nn. 4, 5. Likewise, in *Berlin Dem-*

*ocratic Club v. Rumsfeld,* 410 F.Supp. 144, 151 (D.D.C.1976), also cited by Glaros, there were allegations that out-of-District coconspirators were acting at the behest of superiors in the District.

By distinguishing *Mandelkorn,* we do not mean to imply that we would adopt its rather liberal approach to conspiracy pleading, or to decide that we would recognize a conspiracy theory of personal jurisdiction at all.

* The situation may be different in a state court. *See Main v. Thiboutot,* —— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

*partment· of Social Services*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–8, 56 L.Ed.2d 611 (1978).[5]

### The Massachusetts Defendants

Having determined that the complaint was properly dismissed as to the out-of-state defendants, we turn our attention to the defendants from Massachusetts. The governmental defendants against which appeals are still pending are the Commonwealth of Massachusetts and, apparently, the City of Cambridge.[6] In addition, appeals are pending against Detective Paul Leonard of the Cambridge Police Department and the following "private" individuals: Richard Perse, Robert Reader, Adeline Zucowska, Andrew Nicholas, Frank Maio, Clayton Ellis, George Bope, and Paul Linardos.[7]

■ We discuss the governmental defendants first. Dismissal of the complaint against the Commonwealth of Massachusetts, like dismissal against New Mexico, was warranted because a state is not subject to suit in federal court under 42 U.S.C. § 1983. *Quern v. Jordan, supra*, 440 U.S. at 337–45, 99 S.Ct. at 1143–1158. And, as with the out-of-state municipal defendants, dismissal against the City of Cambridge was in order for failure to state a § 1983; claim.

Glaros did not allege in his complaint any official municipal policy implicating Cambridge. *Monell v. Department of Social Services, supra*, 436 U.S. at 690–95, 98 S.Ct. at 2035–2038. Indeed, the complaint was so bereft of specific allegations concerning the City of Cambridge that it could state no civil rights claim against the City at all. *See Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir. 1979).[8]

■ Glaros' generalized allegations as to the defendant Leonard were likewise insufficient to state a claim under 42 U.S.C. § 1983. The sole statement in the complaint that explicitly pertained to Leonard was: "26. Defendant Paul A. Leonard was a detective for the Cambridge Police Dept. who was involved in the investigation and surveillance of plaintiff." Leonard was perhaps, by implication, linked to a previous allegation that Massachusetts governmental agencies had conducted "an especially intimidating twenty four hour a day surveillance from approximately September 10, 1976 until March 3, 1977."[9] Nothing more is pled to describe further this surveillance, or to illustrate how Leonard's actions deprived Glaros of rights protected by the first, fourth, fifth, sixth, ninth and fourteenth amendments as cited in the complaint.

---

5. Because the district court lacked personal jurisdiction over the out-of-state municipal defendants in any event, it is unnecessary to address Glaros' further argument that they could be sued directly under the fourteenth amendment. In this connection, *see Kostka v. Hogg*, 560 F.2d 37, 41–45 (1st Cir. 1977). It is also unnecessary to decide whether the factual allegations concerning the out-of-state governmental defendants were sufficiently detailed, or whether the allegation regarding Rick Brown stated a claim.

6. Glaros advised the district court that he would not pursue an appeal against Suffolk and Middlesex Counties. In this court, he agreed to dismissal of the appeal as to these defendants and the City of Boston. Glaros' statement of issues on appeal indicates that he is pursuing an appeal against both the Commonwealth of Massachusetts and the City of Cambridge, but his later filed motion to dismiss some defendants is not as clear as to the City of Cambridge.

7. Glaros consented to the dismissal of the appeal against Larry Fields. Documents filed in this court indicate that Glaros is principally interested in proceeding against Leonard, Ellis, Nicholas, Maio and Reader. We note that a suggestion of death was filed in the district court as to Zucowska after this appeal was taken.

8. The deficiencies of the complaint make it unnecessary to address Glaros' claim that a municipality may be sued directly under the fourteenth amendment. *See* n. 6, *supra*.

9. This perceived link is confirmed by indications that Glaros alleged, during a hearing before a magistrate, that he observed Leonard parked outside his apartment almost continually from September 1976 to March 1977, and also observed Leonard in Central Square. But these slightly more specific oral allegations are outside the purview of our review of the sufficiency of the complaint. *See Litton Industries, Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir. 1978).

■ Despite Glaros' contention that little specificity is or should be required in *pro se* complaints involving secret activity such as surveillance, we cannot agree that enough was pled as to Leonard. Although we have read *pro se* complaints liberally in accordance with *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972), we have required even *pro se* plaintiffs to plead specific facts backing up their claims of civil rights violations. *Leonardo v. Moran*, 611 F.2d 397, 398 (1st Cir. 1979); *see Francis-Sobel v. University of Maine*, 597 F.2d 15, 17 (1st Cir.), *cert. denied*, 444 U.S. 949, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). In a case allegedly involving surveillance, we do not think it is unrealistic or unfair to expect a plaintiff to describe briefly in his complaint the activities of each defendant said to have surveilled him and how his constitutional rights were impinged upon. Indeed, this is necessary to stating a claim because all surveillance is not *per se* violative of constitutional rights. *See Reporters Committee for Freedom of the Press v. American Telephone and Telegraph Co.*, 593 F.2d 1030, 1042–43, 1064 (D.C.Cir.1978), *cert. denied*, 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979); *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144, 150–51 (D.D.C.1976). In three of the four cases upon which Glaros relies to demonstrate the sufficiency of his allegations, the nature of the alleged surveillance and the impact upon constitutional rights were apparently pled in more detail than was given here about

Leonard. *American Civil Liberties Union v. City of Chicago*, 431 F.Supp. 25, 27–29 (N.D.Ill.1976); *Alliance to End Repression v. Rochford*, 407 F.Supp. 115, 117–20 (N.D. Ill.1975); *Handschu v. Special Services Division*, 349 F.Supp. 766, 767–71 (S.D.N.Y. 1972). *See Dr. Martin Luther King, Jr. Movement, Inc. v. City of Chicago*, 435 F.Supp. 1289, 1294 (N.D.Ill.1977). To the extent that *Founding Church of Scientology, Inc. v. Director, Federal Bureau of Investigation*, 459 F.Supp. 748, 756–57 (D.D.C. 1978), would uphold conclusory allegations of surveillance against a motion to dismiss, we decline to follow it.[10]

■ As to the Massachusetts defendants who are private individuals, Glaros has also failed to state a claim under 42 U.S.C. § 1983. Like Leonard, these individuals were said to have engaged in surveillance of Glaros, but few if any further details were given.[11] Missing were a description of the means used in surveilling and monitoring Glaros, the nature of the alleged intrusion, and in some instances the location and timing of such activities. Not enough was said about the conduct of the defendants Nicholas and Ellis to distinguish their behavior from that of an ordinary nosey neighbor. As with Leonard, there was no outline of how those defendants' conduct violated any of Glaros' constitutional rights.

■ Not only were the allegations concerning the private defendants insufficient to depict a violation of a federally protected right, but also they did not suffice to state a claim that the private individuals' conduct was under color of state

---

**10.** Although the district court relied in part upon *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–2326, 33 L.Ed.2d 154 (1972), in dismissing the complaint as to Leonard, we need not discuss in detail the applicability of that case. Suffice it to say that, while Glaros did allege that he was the focus of surveillance and that he suffered present harm—mostly in the form of mental distress—it is doubtful he presented a justiciable claim that his first amendment rights had been violated.

**11.** Perse was said to have been "continuously involved in the physical surveillance of plaintiff in the Central Square area of Cambridge, Massachusetts for approximately two years";

Reader was "involved in the surveillance of plaintiff at Cambridge, Ma."; Nicholas was "involved in the surveillance of plaintiff and because he lived in a room adjoining where plaintiff lives, monitored visits plaintiff had with his friends"; Zucowska was "involved in the surveillance of plaintiff at Cambridge, Ma. on only several occasions [*sic*]"; Ellis "lived in the same building as plaintiff and monitored plaintiffs activities there"; Bope was "involved in the surveillance of plaintiff on one occassion [*sic*] at Boston Ma."; and Linardos and Maio were "involved in the surveillance of plaintiff in the Central Sq. area of Cambridge, Ma."

law, a requirement of § 1983. Apart from conclusory statements that all defendants acted under color of law, and generalized allegations of conspiracy between all defendants, there was only the allegation that the individual private defendants "cooperated in the surveillance of plaintiff on the request of government agencies." Although it is true that private parties jointly engaged with state or local officials in prohibited conduct can be said to act under color of state law, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970), general allegations of cooperation between private individuals and unspecified government agencies do not, in our opinion, make out a claim of action taken under color of state law.. *See Grow v. Fisher*, 523 F.2d 875, 878–79 (7th Cir. 1975). Especially because the circumstances under which cooperation by a private party with law enforcement personnel will convert private action to state action are unclear, *see Reporters Committee For Freedom of the Press v. American Telephone and Telegraph Co., supra*, 593 F.2d at 1041, it is appropriate to require that the relationship or nature of cooperation between the state and a private individual be pled in some detail. This is in line with our requirement that some factual basis supporting the existence of a conspiracy must be pled when a conspiracy is alleged in a civil rights case. *Francis–Sobel v. University of Maine, supra*, 597 F.2d at 17; *Slotnick v. Staviskey, supra*, 560 F.2d at 33. *See also Sparkman v. McFarlin*, 601 F.2d 261, 266–67 (7th Cir. 1979) (Sprecher, J., concurring). Although it is possible that, in a given case, the very events alleged will lead to an inference that private action was taken under color of state law, *see Lessman v. McCormick*, 591 F.2d 605, 607–09 (10th Cir. 1979), we do not agree with Glaros that this is such a case, particularly in the absence of any allegations showing contact between the private defendants and state and local officials. For the above reasons, dismissal as to the defendant private individuals for failure to state a § 1983 claim was appropriate.[12]

### "Unknown" Defendants

Glaros' complaint also listed certain "unknown" defendants, including "unknown" officials, employees, agents, or contractors of the FBI, and of the various governmental entities sued. As of the time the court acted on the motions to dismiss by the named defendants, the "unknown" defendants had not been identified or served. It was therefore open to the district court to dismiss the complaint as to the "unknown" defendants for lack of personal jurisdiction. *See United States ex rel. Lee v. Illinois*, 343 F.2d 120, 120–21 (7th Cir. 1965). Although Glaros cites *Lowenstein v. Rooney*, 401 F.Supp. 952, 960 (E.D.N.Y.1975) for the contrary, we do not take that case to mean that the district court was obliged to wait indefinitely for Glaros to take steps to identify and serve the "unknown" defendants.[13]

### The Motion to Amend

Notwithstanding our conclusion that Glaros' first amended complaint was subject to dismissal as to all defendants, we must consider whether leave to amend should have been granted. The background events to this determination are as follows. The original complaint was filed on January 31, 1978, and the first amended complaint was submitted on June 29, 1978. On January 19, 1979, a magistrate before whom a hearing had been held recommended dismissal of the first amended complaint, in large measure because he viewed Glaros' allega-

---

12. Glaros' contention that he stated a claim under 42 U.S.C. § 1985 may be summarily rejected. Aside from the fact that § 1985 was not mentioned in his complaint and his allegations of conspiracy were conclusory, the complaint contained no allegations of class-based animus, a prerequisite for a § 1985 action. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Hahn v. Sargent*, 523 F.2d 461, 468–69 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

13. We need not pass on the sufficiency of the allegations concerning the "unknown" defendants.

tions as conclusory. On January 29, 1979, Glaros moved to amend his first amended complaint, representing in the motion that he was working on proposed amendments. On February 14, 1979, Glaros moved to add the "first part" of the amendments to his first amended complaint, in which "first part" he attempted to state a claim against the United States under the Federal Tort Claims Act but again kept most of his allegations rather general. On May 7, 1979, Glaros notified the court that research into the application of state law to the Federal Tort Claims Act had delayed his drafting of an amended complaint. On May 11, 1979, the magistrate, to whom the motions to amend and to add had been referred, denied them on the ground that the first amended complaint and proposed amendment were frivolous. Glaros objected, and filed a supporting memorandum and appendix, but the district court dismissed the complaint on June 22, 1979. In its opinion, the court repeated several times that Glaros had failed to support his conclusory allegations with factual details, and stated that an order for a more definite statement would be futile. Subsequently, Glaros moved for reconsideration, renewing his request for leave to amend. The district court denied the motion for reconsideration without opinion,[14] thus effectively denying leave to amend.

■ In arguing that this was error, Glaros contends that he was entitled to amend as of right because some defendants had not filed responsive pleadings. This argument fails, Glaros having already amended his complaint once. Fed.R.Civ.P. 15(a).

Alternatively, Glaros asserts that the district court abused its discretion in denying leave to amend. This requires our consideration of the reason given for the district court's action. We understand the district court's denial of leave to amend as having been based on Glaros' refusal to support his conclusory allegations with specific facts. Our review of the district court record suggests to us that Glaros was not unwilling to be specific, at least with respect to some defendants. For example, the record discloses that, at a hearing before the magistrate, Glaros specified his allegations concerning defendant Leonard (Cambridge Police Officer) to the extent of stating that he observed Leonard parked outside his apartment almost continually from September 1976 to March 1977 and also observed Leonard in the Central Square area.[15] In his memorandum in support of his objection to the magistrate's denial of his motion to amend, Glaros explained that he had made his factual allegations general in the belief that they satisfied Rule 8, Fed.R.Civ.P., and insisted that he could produce sufficient specific factual allegations if allowed to amend his complaint. The memorandum itself included a description of an incident which led Glaros to believe Leonard had been surveilling him, more specific allegations concerning defendants Ellis and Nicholas, and factual allegations apparently intended to show that he was being surveilled as part of a Cambridge Police Department program to investigate political groups and that city officials ignored his protest by letters. Moreover, in moving for reconsideration, Glaros repeated that he was willing to provide more detailed allegations.

■ We conclude, that since this is a *pro se* complaint, the stated reason for the district court's denial of leave to amend, failure to supply factual details, cannot withstand scrutiny. This does not mean, however, that leave to amend must be granted, for there may well have been some other, valid reason for refusing leave to amend. *See Vargas v. McNamara,* 608 F.2d 15, 19

14. The district court agreed to treat Glaros' letter of June 28, 1979 as a motion for reconsideration under Rule 59(e), Fed.R.Civ.P., but denied the motion "upon consideration of plaintiff's arguments in support of the [motion]."

15. Both the magistrate and the district court seemed to regard these allegations as still conclusory and made much of Glaros' "refusal" to explain how his allegations warranted the inference Leonard was surveilling him. Because these allegations at least described Leonard's behavior and gave a time and place, we find it difficult to term them conclusory.

(1st Cir. 1979). Although Fed.R.Civ.P. 15(a) provides that "leave [to amend] shall be freely given when justice so requires," leave to amend may properly be denied for a variety of reasons including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Here we think the best course, the one followed in *Vargas, supra,* is to remand this case to the district court for redetermination of whether amendment would be in the interest of justice. On remand, the district court may assess the reasons for Glaros' delay in moving to amend his first amended complaint, and weigh the prejudice to the defendants that would result from allowance of a further amendment. The court may also consider the reasons for Glaros' delay in formulating proposed amendments and his failure to incorporate specific allegations into such amendments or a proposed second amended complaint.[16] Furthermore, the court may consider whether amendment would be futile, not because Glaros is unprepared to make more specific allegations but because such allegations would still be insufficient to state a claim. We intimate no view on this point, nor do we imply that only the above factors may be considered.

Although we have decided that there must be further consideration of Glaros' request to amend, we require such consideration only as to the individual Massachusetts defendants, the City of Cambridge, and the United States (whom Glaros sought to add as a defendant). We have held that the district court lacked personal jurisdiction over the out-of-state defendants and the "unknown" defendants, and Glaros has advanced no proper basis upon which he could sue the Commonwealth of Massachusetts.

*Conclusion*

The judgment of dismissal is affirmed as to the out-of-state defendants, the "unknown" defendants, and the Commonwealth of Massachusetts. The case is otherwise remanded to the district court for redetermination of the motion to amend as to the other defendants against whom Glaros wishes to proceed,[17] and the United States.

---

**16.** Ordinarily, a proposed amendment or a new pleading should be submitted along with a Rule 15(a) motion to amend. 3 Moore's Federal Practice ¶ 15.12, at 15–152–53 (2d ed. 1979).

**17.** See n. 8, *supra.*