Patrick CATRONE, Plaintiff,

v.

OGDEN SUFFOLK DOWNS, INC.; Robert O'Malley, Individually and In His Capacity as Vice President and General Manager of Ogden Suffolk Downs, Inc.; Thoroughbred Racing Protective Bureau; Victor Wickman, Individually and In His Capacity as President of the Thoroughbred Racing Protective Bureau; Paul Berube, Individually and In His Capacity as Vice President of the Thoroughbred Racing Protective Bureau; Thoroughbred Racing Association; and Kenneth Graf, Individually and In His Capacity as An Officer of the Thoroughbred Racing Association, Defendants.

Civ. A. No. 86–1529–C.

United States District Court,
D. Massachusetts.

Nov. 12, 1986.

David L. Kelston, Siverglate, Gertner, Baker, Fine and Good, Boston, Mass., for plaintiff.

Michael J. Liston, Palmer & Dodge, Boston, Mass., Jack Kaplan & Gloria M. Gonzalez, Carter, Ledyard & Milburn, New York City, for defendants Thoroughbred Racing Protective Bureau, Thoroughbred Racing Ass'n, Wickman, Berube and Graf.

Alan R. Hoffman, Lynch, Brewer, Hoffman & Sands, Boston, Mass., for defendants Ogden Suffolk Downs and O'Malley.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a civil action in which plaintiff Patrick Catrone alleges violations of the Sherman Act, 15 U.S.C. § 1 et seq.; the Civil Rights Act, 42 U.S.C. § 1983; interference with business relationships; and defamation. The matter is now before the Court on the nonresident defendants' motion to dismiss the complaint for lack of personal jurisdiction.

■ This is a federal question case. This Court has pendent jurisdiction over the Massachusetts state law claims. Personal jurisdiction in federal question cases is a matter of federal law, to be governed by the due process standards of the Fifth Amendment rather than the Fourteenth Amendment. *Driver v. Helms*, 577 F.2d 147, 157 (1st Cir.1978), *rev'd other grounds, sub nom Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (reversed on statutory construction, constitutional issue not reached).

In support of their motion to dismiss, the nonresident defendants argue that the Fifth Amendment due process standards for the exercise of personal jurisdiction by a federal court in a federal question case should be essentially the same as the due process standards under the Fourteenth Amendment. Specifically, defendants argue for a "minimum contacts" approach. Although defendants acknowledge that the law in the First Circuit is contrary to their argument, they contend that the First Circuit's approach is "inconsistent with the U.S. Supreme Court's recent trend away from the sovereignty principles of *Pennoyer v. Neff,* 95 U.S. 714, 5 Otto 714, 24 L.Ed. 565 (1877) toward a concern for fairness." In particular, defendants point to the Supreme Court's opinion in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The approach of the First Circuit has been set forth by the court of appeals in cases decided subsequent to *Shaffer. E.g., Johnson Creative Arts, Inc. v. Wool Masters, Inc.* 743 F.2d 947, 950 (1st Cir.1984). This Court therefore declines to rule those cases as contrary to current Fifth Amendment due process doctrine.

The First Circuit has adopted the "nationwide contacts" approach to personal jurisdiction in federal question cases. *Driver,* 577 F.2d at 155; *Johnson Creative* supra at 950; *Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Company,* 743 F.2d 956, 959 (1st Cir.1984). The "minimum contacts" test for personal jurisdiction was developed in cases testing the limits of a state's jurisdiction over those not found within its boundaries. *Driver,* 577 F.2d at 156. The First Circuit has made clear that the Fifth Amendment due process requirement for the exercise of personal jurisdiction was not "minimum contacts" with a particular district or state; instead, in a federal question case, "federal jurisdiction being national in scope, due process only requires sufficient contacts within the United States as a

whole...." *Trans-Asiatic,* 743 F.2d at 959. Furthermore, in a federal question case a federal court need not inquire into whether "sufficient contacts" for personal jurisdiction exist if the defendant is within the territory of the sovereign—the United States—when served. *Johnson Creative,* 743 F.2d at 950 n. 3. As the court states there,

> The minimum contacts concept is grounded upon notions of territorial limitations on the power of the courts of a particular state to subject a non-resident to its jurisdiction and thereby infringe upon that person's individual liberty interest....
>
> In *International Shoe,* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] the Court determined that ... even a person not present within the territory of the forum may be subjected to a judgment in personam if he has such contacts with the forum that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ... If a person is served *within* the territory of the sovereign represented by the issuing court, there is no question that maintenance of the suit against him will not offend traditional notions of fairness.... The United States does not lose sovereignty when a state's border is crossed. [citation omitted] Thus congress can "provide for service anywhere in the United States." [citation omitted].

Thus under the Fifth Amendment due process standard, federal courts can constitutionally exercise personal jurisdiction over anyone found within the sovereign territory of the United States.[1]

Plaintiff argues that since all defendants were served within the United States, this Court can exercise in personam jurisdiction over them without offending due process. Critical to plaintiff's argument is that defendants have not raised any claim of improper venue, insufficiency of process, in-

---

1. Other Circuits have adopted a separate, venue-like concept of fairness to determine limitations to federal question personal jurisdiction under Fifth Amendment due process, *See Handley v. Indiana & Michigan Electric Co.,* 732 F.2d 1265, 1271 (6th Cir.1984); *Bamford v. Hobbs,* 569 F.Supp. 160, 167–168 (S.D.Tex.1983) (discussing recent Fifth Circuit decisions which "have come down on opposite sides of the issue.").

sufficiency of service of process, or any related concern under applicable statutes, and, accordingly, defendants have now waived such claims. Thus, plaintiff contends, defendants' motion to dismiss rests solely on Fifth Amendment due process grounds. Since the First Circuit has clearly stated that the Fifth Amendment permits the exercise of personal jurisdiction on the basis of nationwide contacts or presence in the territory of the United States, plaintiff argues that it is clear that this Court's exercise of personal jurisdiction over all the defendants is entirely consonant with due process. As recognized by a district court of the First Circuit, however, *Johnson Creative* and *Trans-Asiatic* "have circumscribed the power of nationwide personal jurisdiction to a specific congressional mandate or rule to exercise such power through a mechanism to serve process and attach personal jurisdiction over a defendant." *Colon v. Gulf Trading Company,* 609 F.Supp. 1469, 1474 (D.Puerto Rico 1985).

■ In *Johnson Creative* the court of appeals stated that the nationwide scope of personal jurisdiction under the Fifth Amendment was not limited by the doctrine of minimum contacts: instead, "[t]he limitation is imposed by the Federal Rules of Civil Procedure." *Johnson Creative,* 743 F.2d at 950. Specifically, *Johnson Creative* says that although constitutionally personal jurisdiction can be nationwide, it has been limited by the service of process provisions in Rule 4, Fed.R.Civ.P. *Id.* The court went on to explain the operation of Rule 4:

Rule 4(f) generally limits the service of process of federal district courts to the territorial limits of the state in which the court is held. Rule 4(e) allows for service outside the state when authorized by a statute of the United States or when a statute or rule of court of the state in which the district court is held provides for such service.[2]

*Id.*

An earlier case, *Driver,* 577 F.2d 147, presents an application of the logic of *Johnson Creative* on how the scope of personal jurisdiction tracks the scope of service provisions in Rule 4. In *Driver,* the court addressed a challenge to personal jurisdiction. The statute under which plaintiff sued authorized nationwide service of process. The defendant argued that the statute addressed only the mechanics of service of process, and did not address the exercise of personal jurisdiction. *Id.* at 155. The court ruled that the statute could also be the basis for personal jurisdiction. *Id.* "Congress ... provided nationwide service by mail and expected that broadening service would correspondingly broaden personal jurisdiction," the court explained. *Id.* at 156.

Conversely, in the absence of such express authorization, a federal district court in a federal question case cannot exercise nationwide personal jurisdiction. *See Colon,* 609 F.Supp. at 1475. In *Colon,* the district court addressed a motion to dismiss for lack of personal jurisdiction in a Jones Act case. The Jones Act was silent as to scope of service of process of personal jurisdiction. Finding no federal statutory authority for nationwide service of process,

**2.** Rule 4(e) and (f) states, in relevant part:

(e) Summons: Service Upon Party Not Inhabitant of or Found Within State. Whenever a statute of the United States or an order of court thereunder provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held pro-

vides (1) for service of a summons ... upon a party not an inhabitant of or found within the state ... service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

(f) Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

Fed.R.Civ.P. 4(e), (f).

the court stated that the only alternative authority to serve process was Rule 4, Fed. R.Civ.P. *Colon*, 609 F.Supp. at 1475. Reasoning that "Congress or the Supreme Court have the authority to limit the nationwide personal jurisdiction of federal courts through the manner process may be served and that we are compelled to follow such strictures," *Id.* at 1475 n. 10, the court treated the Rule 4 strictures on service as also strictures on the exercise of personal jurisdiction. *Id.* at 1475.

Under Rule 4, in the absence of specific federal statutory or court rule authority providing for service of process, extraterritorial service is available in a manner prescribed by state statute or court rule. As a result, analysis under the Fifth Amendment due process standards for exercise of personal jurisdiction by a federal court in a federal question case turns to an interpretation of the state long arm statute. Judge Young made precisely this observation in *Buckeye Associates, Ltd. v. Fila Sports, Inc.*, 616 F.Supp. 1484, 1488 n. 5 (D.Mass.1985). The court stated,

> [T]o obtain service and personal jurisdiction on the basis of the defendant's aggregate contacts with the nation as a whole, there must be a federal statute authorizing such action. [citations omitted]. If there is no such federal statute, the federal court must then look to the long arm provisions of the forum state to obtain personal jurisdiction, even in federal question cases.

It is at this point—when scope of personal jurisdiction will be limited by the scope of service of process under the state long arm statute—that the Fourteenth Amendment minimum contacts analysis acts as a precondition to the exercise of personal jurisdiction in a federal question case. *See*

*Johnson Creative*, 743 F.2d at 950; *Colon*, 609 F.Supp. at 1475.[3]

Plaintiff argues that decisions of the First Circuit have clearly rejected the Fourteenth Amendment concept of "minimum contacts" as a limitation imposed on the federal courts adjudicating federal interests. Certainly the language in these cases at first seem to support this contention. *See, e.g. Trans-Asiatic*, 743 F.2d at 959, ("[T]he limits on a state's power over nonresident defendants do not apply to a federal court sitting in admiralty in that state."); *Driver*, 577 F.2d at 156 n. 25, ("Even if we were to say that minimum contacts had to be established, anyone found and served within the United States would have sufficient contacts with the United States.") *Johnson Creative*, 743 F.2d at 950 n. 3. ("Indeed, the 'minimum contacts' concept does not seem particularly relevant in evaluating the validity of service that was not extraterritorial.")

*Johnson Creative*, however, makes clear that the court of appeals rejected "minimum contacts" only as a constitutional, Fifth Amendment due process limitation. *Id.* at 950. Aside from "sufficient contacts" with the United States or presence in its territory, the court in *Johnson Creative* stated, the limitations on the exercise of personal jurisdiction are those found in Fed.R.Civ.P. *Id.* Thus, "minimum contacts" acts as a restraint on personal jurisdiction—not as a matter of Fifth Amendment due process, but rather indirectly as a matter of the directive of Rule 4 to look to the state's long arm statute.

Consequently, to determine the scope of personal jurisdiction in the present case, this Court turns to the statutes under which plaintiff is suing. Plaintiff alleges violations of the Sherman Act, 15 U.S.C. § 1. Section 12 of the Clayton Act, 15

---

**3.** The Fourth Circuit, while taking this approach in *Gkiafis v. Steamship Yiosonas*, 342 F.2d 546 (4th Cir.1965), also noted that it produced two anomalies. "An anomaly in this approach is that the jurisdiction of federal courts dealing with federal questions will vary from state to state. Some plaintiffs will be unable to obtain service on foreign corporations while such ser- vice would be available to similarly situated plaintiffs in federal courts sitting in other states." *Id.* at 549. If the long arm statute of the state goes to the constitutional limit, "we find ourselves confronted with another anomaly—the Fourteenth Amendment could operate to limit the jurisdiction of a federal court considering a federal question." *Id.* at 554.

U.S.C. § 22, provides for nationwide service upon a corporate defendant in antitrust suits. Section 12 of the Act provides,

> Any suit, action, or proceeding under the antitrust laws *against a corporation* may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, *or wherever it may be found.*

15 U.S.C. § 22 (emphasis added). By its own terms, this provision is not applicable to individuals. *California Clippers, Inc. v. U.S. Soccer Football Association,* 314 F.Supp. 1057, 1065 (N.D.Cal.1970). Thus, as discussed above, if there are nationwide contacts of the corporate defendants, this Court may exercise personal jurisdiction over the corporate defendants. *See also Pacific Tobacco Corp. v. American Tobacco Company,* 338 F.Supp. 842, 844 (D.Oregon 1972) (Under Section 12 of the Clayton Act, venue and personal jurisdiction are virtually congruent). The nonresident corporate defendants in this case are Thoroughbred Racing Protective Bureau and the Thoroughbred Racing Association. Both are New York corporations and thus present within the territory of the United States. Exercise of personal jurisdiction by this Court over the corporate defendants in this case therefore complies with due process under the Fifth Amendment.

■ As to the individual nonresident defendants, the federal statutes under which plaintiff is suing apparently contain no other service or personal jurisdiction provisions.[4] Consequently, we look to Rule 4's service of process provisions, which in turn directs us to Massachusett's long arm statute. The applicable Massachusetts statute, Mass.Gen.Laws c. 223A, § 3, provides in pertinent part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

> (a) transactions any business in this commonwealth; ...
>
> (c) causing tortious injury by an act or omission in this commonwealth;
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; ...

The Court of Appeals for the First Circuit has noted that Massachusetts courts have construed the state long arm statute as imposing a set of constraints on the assertion of jurisdiction in addition to the constraints imposed by the Constitution. *Hahn v. Vermont Law School,* 698 F.2d 48, 50 (1st Cir.1983). Consequently, the court of appeals in *Hahn* explained, the inquiry into jurisdiction is twofold: 1) is the assertion of jurisdiction authorized by the statute, and 2) if authorized, is the exercise of personal jurisdiction under state law consistent with due process requirement of the United States Constitution. *Id.*

■ Plaintiff has the burden of proving that this Court has in personam jurisdiction over the defendants. *American Freedom Train Foundation v. Spurney,* 747 F.2d 1069, 1075 (1st Cir.1984). It is incumbent upon the plaintiff to prove the facts necessary to sustain jurisdiction. *Id.* Plaintiff presents three theories for obtaining jurisdiction over the individual defendants Graf, Wickman, and Berube. Plaintiff first argues that all the defendants have engaged in out-of-state tortious conduct causing injury to plaintiff inside Massachusetts sufficient to satisfy minimum contacts requirements.

■ Plaintiff addresses the due process issue without specifically addressing whether this Court can exercise personal jurisdiction over the individual defendants by way of the Massachusetts long arm statute. Apparently plaintiff contends that

---

**4.** The Civil Rights Act does not authorize nationwide service of process. *Safeguard Mutual In-*

*surance Company v. Maxwell,* 53 F.R.D. 116, 118 (E.D.Penn.1971).

personal jurisdiction is statutorily proper under § 3(d).[5] Section 3(d) permits the exercise of jurisdiction over defendants with respect to causes of action "arising from" the person's causing tortious injury within the commonwealth if he "regularly does or solicits business, or engages in any other persistant course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth." The section has two components: the injury and the conduct. *Walsh v. National Seating Co., Inc.*, 411 F.Supp. 564, 571 (D.Mass.1976). Plaintiff alleges that he is unable to pursue in Massachusetts his occupation of training racehorses because of defendants' conduct; this is sufficient to satisfy the requirement of "tortious injury in this commonwealth." *See Buckeye Associates, Ltd. v. Fila Sports, Inc.*, 616 F.Supp. 1484, 1493 (D.Mass.1985) (alleged interference with plaintiffs business relations with prospective buyers in Massachusetts, causing lost sales, constituted "tortious injury in this commonwealth" for purposes of § 3(d)).

The next requirement under § 3(d), however, is that plaintiff must demonstrate that each of the individual defendants "regularly does or solicits business" in Massachusetts, or otherwise engages in any "persistent course of conduct" here, or in the alternative, that defendant "derives substantial revenue from goods used or consumed" in Massachusetts. There is nothing in plaintiff's pleadings or affidavits to indicate that defendant Graf has regularly conducted any business activities or engaged in any persistent course of conduct in Massachusetts. Plaintiff has therefore failed to show personal jurisdiction over Graf under § 3(d).

There is no jurisdiction under § 3(d) without a showing of causal connection between defendant's acts and claimed injury. *See Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907–08 (1st Cir.1980) (interpreting provision of

Puerto Rico statute similar to Mass.Gen. Laws c. 223A, § 3(d)). Although plaintiff's complaint alleges that defendant Wickman disseminated information that plaintiff had run "ringers"—that is, substituting a superior horse for an inferior horse in a horserace—plaintiff's affidavit contains no assertions to support this allegation. In the context of a motion to dismiss for lack of personal jurisdiction, the plaintiff must go beyond the pleadings and make affirmative proof—by affidavits or otherwise—showing that the court has jurisdiction. *Chlebda v. H.E. Fortna and Brother, Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979). Plaintiff's affidavit merely states that in 1981 Wickman ejected plaintiff from the race grounds at the Great Barrington Fair in Northamption, Massachusetts, where plaintiff was a spectator, and that defendant Wickman told plaintiff that he would be arrested if he ever came back. Thus plaintiff has failed to sufficiently set forth specific facts that defendant Wickman caused the tortious injury in Massachusetts complained of—loss of training license and racing privileges. This Court concludes that there is no personal jurisdiction over Wickman under § 3(d).

Plaintiff's affidavit states that defendant Paul Berube personally ejected plaintiff from several non-Massachusetts race tracks. This allegation fails to show any causal link between Berube's conduct and plaintiff's alleged injury in Massachusetts. Plaintiff's affidavits further state that Berube testified against plaintiff before the Florida Racing Commission, and that Berube was directly involved with investigations of plaintiff and preparation of reports which were used at State Racing Commission hearings. As part of his duties with TRPB, Berube supervised investigators and security personnel at Suffolk Downs. In 1974 Berube met Attorney John Tarrant in Massachusetts to provide technical assistance on rules of thoroughbred racing. Berube testified in 1979 in a

---

**5.** Plaintiff's opposition memorandum states, "[A]ll the defendants have engaged in activities which, even if they occurred outside Massachu- setts, have caused injury inside the State sufficient to satisfy minimum contacts requirements."

hearing on plaintiff's appeal of the denial of a trainer's license before the New Hampshire Racing Commission. In February 1982 Berube testified at a hearing before the Massachusetts State Racing Commission on plaintiff's appeal from Ogden Suffolk Down's refusal to accept plaintiff's entries. (Affidavit of Paul Berube). Plaintiff has not satisfactorily set forth facts showing that defendant Berube's actions caused plaintiff tortious injury in Massachusetts as required under § 3(d). Moreover, plaintiff has failed to demonstrate that the remaining requirements of § 3(d) are satisfied. Although Berube has transacted business in Massachusetts, plaintiff has not shown that Berube regularly does or solicits business in Massachusetts or otherwise engages in any persistent course of conduct here, nor derives substantial revenue from goods used or consumed in Massachusetts. *See Kolikof v. Samuelson,* 488 F.Supp. 881, 884 (D.Mass.1980) (in action for illegal tape recording of telephone calls infrequent visits to Massachusetts together with two telephone calls, ruled insufficient to satisfy criteria of § 3(d)). This Court therefore concludes that it does not have personal jurisdiction over defendant Berube in this case under § 3(d).

■ Plaintiff's second theory for obtaining personal jurisdiction over the individual defendants is "jurisdiction by necessity," based on the relationship of the parties, the forum, and the litigation. This theory essentially incorporates aspects of the traditional minimum contacts analysis, such as the forum's interest in the litigation, convenience of the parties, and the level of contacts among the parties. Once again, however, the specific requirements of the state long arm statute must be satisfied before analyzing the assertion of jurisdiction under the due process clause. *Hahn v. Vermont Law School,* 698 F.2d 48, 50 (1st Cir.1983). Plaintiff has failed to state which provision of the long arm statute his jurisdiction by necessity theory purportedly satisfies. This Court will nevertheless treat the inquiry as whether plaintiff has established prima facie a fact pattern that meets the literal requirements of Mass.Gen.Laws c. 223A, § 3. *See North American Video Corporation v. Leon,* 480 F.Supp. 213, 217 (D.Mass.1979).

Subsection (a) of c. 223A, § 3 relates to causes of action "arising from" a person's "transacting any business" in Massachusetts. Section 3(a) has been interpreted to extend to its due process limits. *Balloon Bouquets, Inc. v. Balloon Telegrams Delivery, Inc.,* 18 Mass.App. 935, 936, 466 N.E.2d 523 (1984). The statutory language "transacting any business," the Court of Appeals for the First Circuit noted, has been construed broadly. *Hahn v. Vermont Law School,* 698 F.2d 48, 50, 52 (1st Cir.1983). In *Ross v. Ross,* 371 Mass. 439, 441, 358 N.E.2d 437 (1976), the Massachusetts Supreme Judicial Court stated that the reference to transacting any business does not require that the defendant have engaged in commercial activity. That language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial. In *Hahn,* the purposeful actions of the defendant school in mailing to plaintiff in Massachusetts application information and an acceptance letter were sufficient, without more, to constitute transacting business under the broadly construed Massachusetts long-arm statute. *Hahn,* 698 F.2d at 51.

Plaintiff has presented nothing in his pleadings or affidavits to indicate that defendant Graf has conducted any business activities in Massachusetts. Although defendant Graf states in his supplemental affidavit that from time to time he has had occasion to have telephone conversations or correspondence with persons in Massachusetts, plaintiff has presented no evidence that his complained of injury "arises from" these contacts of Graf with Massachusetts. The long arm statute confers jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established. *Good Hope Industries, Inc. v. Ryder Scott Company,* 378 Mass. 1, 6, 389 N.E.2d 76 (1979). Exercise of jurisdiction under § 3(a) will fail if the cause of action did not arise from defendant's transaction

of business in Massachusetts. *Gray v. O'Brien,* 777 F.2d 864, 867 (1st Cir.1985). Thus, this Court does not have personal jurisdiction over defendant Graf by virtue of § 3(a).

Defendant Wickman, on the other hand has transacted business in the Commonwealth. His duties with TRPB involved his presence in Massachusetts on approximately six occasions. On one of these occasions, in September 1981, defendant Wickman ejected plaintiff from the Great Barrington Fair in Great Barrington, Massachusetts. However, similar to the plaintiff's failure to show a causal link of alleged conduct by Wickman and plaintiff's injury in § 3(d), here plaintiff has failed to make any showing that his causes of action against defendant Wickman "arise out of" Wickman's transacting business in Massachusetts. Thus Wickman does not fall within the provision of personal jurisdiction under § 3(a).

Defendant Berube has also transacted business in the Commonwealth. In his affidavit Berube states that as part of his duties with TRPB he supervised investigators and security personnel at tracks throughout New England states, including Suffolk Downs in Massachusetts. Berube further states that in 1974 he met with Attorney John Tarrant in Massachusetts to provide technical assistance on rules and procedures of thoroughbred racing. In February 1982, Berube testified at a hearing before the Massachusetts State Racing Commission on plaintiff's appeal from Ogden Suffolk Down's refusal to accept plaintiff's entries. Plaintiff's affidavit states no other instances of Berube transacting any business in Massachusetts. In his affidavit, Berube states that other than his testimony before the Racing Commission, he has not otherwise disseminated any information to Ogden Suffolk Downs or O'Malley. Defendants maintain that personal jurisdiction cannot be maintained on the basis of Berube's testimony before the Racing Commission because words spoken by a witness in the course of judicial proceedings are absolutely privileged if pertinent to the proceedings. Without addressing that issue, it is clear that plaintiff's claim does not arise out of Berube's testimony before the Racing Commission. Plaintiff states that his claim arises from "systematic and continuing actions" by the defendants. Plaintiff's affidavit fails to show how—if at all—Berube's testimony before the Racing Commission in Massachusetts is related to the alleged illegal systematic action by Berube. Thus, plaintiff's claims against Berube cannot be said to arise out of Berube's testimony before the Racing Commission. Consequently, § 3(a) does not give this Court personal jurisdiction over Berube or the other nonresident individual defendants.

█ As an alternative ground, this Court also rules that the individual defendants Graf, Wickman, and Berube, lack the minimum contacts constitutionally required for this Court to exercise in personam jurisdiction. As the court of appeals succinctly summarized in *American Freedom Train Foundation v. Spurrey,* 747 F.2d 1069, 1075 (1st Cir.1984):

> The well known formulation of the *International Shoe* case requires that in order for due process requirements to be satisfied, the nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. [310] at 316, 66 S.Ct. [154] at 158 [90 L.Ed. 95]. Such minimum contacts may be deemed to exist when the controversy arises out of the defendant's activities within the forum state, if his conduct is "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Plaintiff has not shown that the controversy arises out of the individual defendants' activities within the forum state. Due process can also be satisfied if defendants' contacts with the forum state were of a "continuous and systematic nature." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). *Perkins v. Benguet Consolidated Mining Co.,* 342

U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952); *American Freedom Train Foundation*, 747 F.2d at 1075. Plaintiff has not shown, however, that the nonresident individual defendants' contacts with the Commonwealth were "continuous and systematic."

Plaintiffs argue that the recent United States Supreme Court cases *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) demonstrate that unlawful activity initiated outside the forum and affecting plaintiff inside the forum supports the assertion of personal jurisdiction. These recent decisions, which upheld jurisdiction, emphasized that the foreseeability by the defendant of litigation in the forum is an important factor in satisfying the due process requirement. In *Burger King* the defendant Rudzewicz purposefully entered into a detailed, long-term franchise agreement with Burger King. The Court ruled that litigation in that forum was foreseeable, satisfying the minimum contacts requirement. *Burger King*, 105 S.Ct. at 2186–2187. *Calder* involved a libel action. The Court ruled that the defendant journalists knew that the brunt of any injury stemming from their article would be in California and they reasonably should have foreseen being sued there. *Calder*, 465 U.S. at 789–790, 104 S.Ct. at 1487–88. The same type of purposeful action directed at the forum state, however, is not present in this case in the instances of defendants Graf, Wickman, and Berube.

Plaintiff's third and final theory of obtaining personal jurisdiction as to all individual nonresident defendants is a conspiracy theory. According to this theory, personal jurisdiction can be obtained over out-of-state defendants who have conspired with in-state defendants, if there were substantial acts performed in the forum state in furtherance of the conspiracy of which the out-of-state conspirators were or should have been aware. *Glaros v. Perse*, 628 F.2d 679, 682 (1st Cir.1980) (*citing Gemini Enterprises, Inc. v. WFMY Television Corporation*, 470 F.Supp. 559, 564–65 (M.D.N.C.1979)). The First Circuit has nei-

ther adopted nor foreclosed the conspiracy theory of jurisdiction *Glaros*, 628 F.2d at 682 n. 4 ("[W]e do not mean to imply that we would adopt ... [this] rather liberal approach to conspiracy pleading, or to decide that we would recognize a conspiracy theory of personal jurisdiction at all."). The court in *Glaros*, however, did demonstrate that adequate grounds for dismissing a complaint exist when the conspiracy theory standard, as it has been refined by other courts, has not been met. *Glaros*, 628 F.2d at 682. Plaintiff argues that this is a compelling case for the imposition of jurisdiction under the conspiracy theory because "the existence throughout the United States of the rule of reciprocity [among racetracks], through which punitive actions of one entity against one person within its jurisdiction translate into punishment against that individual everywhere."

In order to establish grounds for personal jurisdiction under the conspiracy theory in this case, plaintiff must establish with detailed factual allegations 1) that a conspiracy to deprive plaintiff of his rights existed; 2) that the out-of-state defendants Graf, Wickman, or Berube were parties to the conspiracy with in-state defendants Ogden Suffolk Downs, Inc. or Robert O'Malley; and 3) that substantial acts in furtherance of the conspiracy, of which Graf, Wickman, or Berube were aware or should have been aware, took place in Massachusetts. *See Glaros*, 628 F.2d 679, 682 (1st Cir.1980) (*citing Gemini Enterprises*, 470 F.Supp. 559, 564 (M.D.N.C.1979); *Gilday v. Quinn*, 547 F.Supp. 803, 805 (D.Mass. 1982). Plaintiff has failed to submit detailed factual allegations connecting defendants Graf, Wickman, and Berube with alleged substantial acts in furtherance of the conspiracy occurring in this state. Consequently, plaintiff has failed to establish that the requirements of the conspiracy theory of personal jurisdiction have been satisfied. *See Glaros*, 628 F.2d 679, 682 n. 4 (1980); *Jan Schaick v. Church of Scientology of California, Inc.*, 535 F.Supp. 1125, 1132–33 (D.Mass.1982); *Gilday*, 547 F.Supp. at 805.

This Court's examination of plaintiff's pleadings and affidavits indicates that al-

lowing further limited discovery on the jurisdictional issue with regard to defendant Berube is reasonable. Order accordingly.

ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. Defendants' motion to dismiss the complaint for lack of personal jurisdiction as to defendants Thoroughbred Racing Protective Bureau and Thoroughbred Racing Association is denied.

2. Defendants' motion to dismiss the complaint for lack of personal jurisdiction as to defendants Victor Wickman and Kenneth Graf is allowed.

3. Plaintiff's motion for further limited discovery on the jurisdictional issue with regard to defendant Paul Berube is allowed.

4. Defendants' motion to dismiss the complaint for lack of personal jurisdiction as to defendant Paul Berube is continued pending completion of discovery.